Fred Frankfort, Jr., and Renee Frankfort, Petitioners *v.* Commissioner of Internal Revenue, Respondent

Docket No. 1504–67. Filed April 29, 1969.

*Robert S. Braunschweig,* for the petitioners.
*John K. Antholis* and *Marvin A. Fein,* for the respondent.

164

166

**168**

RAUM, *Judge:* We are again faced with the "distressingly complex and confusing" provisions of subchapter K, *David A. Foxman*, 41 T.C. 535, 551 fn. 9, affirmed 352 F. 2d 466 (C.A. 3), and our task has not been lightened by petitioners' various alternative arguments which were not developed with clarity in their briefs. However, we think that petitioners are entitled to prevail by reason of the provisions relating to "unrealized receivables" in sections 736 and 751, set forth in the margin below.[2]

---

[2] SEC. 736. PAYMENTS TO A RETIRING PARTNER OR A DECEASED PARTNER'S SUCCESSOR IN INTEREST.

(a) PAYMENTS CONSIDERED AS DISTRIBUTIVE SHARE OR GUARANTEED PAYMENT.— Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, except as provided in subsection (b), be considered—

(1) as a distributive share to the recipient of partnership income if the amount thereof is determined with regard to the income of the partnership, or

(2) as a guaranteed payment described in section 707(c) if the amount thereof is determined without regard to the income of the partnership.

(b) PAYMENTS FOR INTEREST IN PARTNERSHIP.—

(1) GENERAL RULE.—Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, to the extent such payments (other than payments described in paragraph (2)) are determined, under regulations prescribed by the Secretary or his delegate, to be made in exchange for the interest of such partner in partnership property, be considered as a distribution by the partnership and not as a distributive share or guaranteed payment under subsection (a).

(2) SPECIAL RULES.—For purposes of this subsection, payments in exchange for an interest in partnership property shall not include amounts paid for—

(A) unrealized receivables of the partnership (as defined in section 751(c)), or

(B) good will of the partnership, except to the extent that the partnership agreement provides for a payment with respect to good will.

SEC. 751. UNREALIZED RECEIVABLES AND INVENTORY ITEMS.

(a) SALE OR EXCHANGE OF INTEREST IN PARTNERSHIP.—The amount of any money, or the fair market value of any property, received by a transferor partner in exchange for all or a part of his interest in the partnership attributable to—

(1) unrealized receivables of the partnership, or

(2) inventory items of the partnership which have appreciated substantially in value, shall be considered as an amount realized from the sale or exchange of property other than a capital asset.

(b) CERTAIN DISTRIBUTIONS TREATED AS SALES OR EXCHANGES.—

(1) GENERAL RULE.—To the extent a partner receives in a distribution—

(A) partnership property described in subsection (a)(1) or (2) in exchange for all or a part of his interest in other partnership property (including money), or

(B) partnership property (including money) other than property described in subsection (a)(1) or (2) in exchange for all or a part of his interest in partnership property described in subsection (a)(1) or (2),

such transaction shall, under regulations prescribed by the Secretary or his delegate, be considered as a sale or exchange of such property between the distributee and the partnership (as constituted after the distribution).

(2) EXCEPTIONS.—Paragraph (1) shall not apply to—

(A) a distribution of property which the distributee contributed to the partnership, or

(B) payments, described in section 736(a), to a retiring partner or successor in interest of a deceased partner.

(c) UNREALIZED RECEIVABLES.—For purposes of this subchapter, the term "unrealized receivables" includes, to the extent not previously includible in income under the method of accounting used by the partnership, any rights (contractual or otherwise) to payment for—

(1) goods delivered, or to be delivered, to the extent the proceeds therefrom would be treated as amounts received from the sale or exchange of property other than a capital asset, or

(2) services rendered, or to be rendered.

At the date of Fred, Senior's death, the partnership had already performed the services entitling it to brokerage commissions on the sales of 25 parcels of real estate, but payment of those commissions was not due until the actual closings of the sales. In fact, however, such closings did occur and net commissions aggregating $24,010 were actually received no later than October 1961 in respect of 24 sales. A $500 commission in respect of the 25th contract of sale was received in January 1963. Although these commissions were not recorded on the books of the business until received, they nevertheless represented a valuable asset as of the date of Fred, Senior's death. And since they did not appear on the books as an asset, the payment for the decedent's capital interest under article Sixth (a) of the partnership agreement did not include anything in respect of those commissions. However, additional payments were required under article Sixth (b) to the decedent's widow, and we find it difficult to believe that such payments were not intended at least in part to reflect the decedent's interest in those commissions. Certainly, to the extent of decedent's interest in those commissions, petitioner's obligation to make payments to his mother was no different from a like obligation that might have been negotiated at arm's length between unrelated partners and was not based on a moral obligation as contended by the Government. Cf. *Autenreith* v. *Commissioner*, 115 F. 2d 856 (C.A. 3); *Edwards* v. *Commissioner*, 102 F. 2d 757 (C.A. 10).

In our view, the commissions were "unrealized receivables," and the decedent's 55-percent partnership interest therein exceeded the total amount ($11,000) paid to the widow during the 3 years before us. Leaving out of consideration the $500 commission paid in 1963, which at best appears to have been a highly doubtful item as of decedent's death (June 26, 1961), the remaining 24 items aggregating $24,010 appear to have been worth very close to their net face amount as of June 26, 1961. One was in fact paid on June 29, 1961; nine were paid in July 1961; eleven were paid in August 1961; two were paid in September 1961; and the last one was paid on October 10, 1961. Thus, although we recognize that in determining the amount attributable to the unrealized receivables full account must be taken of the estimated cost of completing performance as well as the time between the sale and the time of payment (sec. 1.751–1(c)(3), Income Tax Regs.), there did not in fact appear to be any additional costs nor was there any lapse of time of consequence between decedent's death and the collection of the commissions. In our judgment the decedent's 55-percent interest in the $24,010 unrealized commissions had a fair market value in excess of the aggregate of the $11,000 payments to his widow involved herein. Accordingly, since the payments made to her during the tax years did not exceed the amount of the decedent's

interest in these unrealized receivables, they are deductible by petitioner.[3]

It must be remembered that the uncollected commissions represented the largest asset of any consequence owned by the partnership, and unless they are to be charged against the payments required to be made under article Sixth (b), the decedent's interest therein would remain entirely uncompensated. It therefore seems particularly appropriate to allocate these unrealized receivables to the article Sixth (b) payments. In so holding, we wish to make clear that we are not passing upon the question whether the partners may effectively spell out in their agreement to what payments, if any, the unrealized receivables may or may not be allocated and thus fix as among themselves their respective tax liabilities upon the liquidation or sale of a partnership interest. Cf. *David A. Foxman, supra.* We do not here rule whether in such circumstances the unrealized receivables must automatically be allocated to any particular consideration received if the partnership agreement provides otherwise. We hold simply that in the absense of any such provision in the agreement it is appropriate to make the allocation, particularly where the evidence strongly suggests that such an allocation is in accord with the probable intentions of the parties.

In view of our conclusion set forth above, we do not consider any of the other grounds urged by petitioners to support the claimed deductions.

*Decision will be entered under Rule 50.*

---

[3] See sec. 1.736–1 (b) (2), Income Tax Regs. :

(2) Payments made to a retiring partner or to the successor in interest of a deceased partner for his interest in unrealized receivables of the partnership in excess of their partnership basis, including any special basis adjustment for them to which such partner is entitled, shall not be considered as made in exchange for such partner's interest in partnership property. Such payments shall be treated as payments under section 736(a) and paragraph (a) of this section. For definition of unrealized receivables, see section 751(c).

See also 3A Mertens, Law of Federal Income Taxation, sec. 21.27 ; cf. *Miller* v. *United States,* 181 Ct. Cl. 331 (20 A.F.T.R. 2d 5569, 67–2 U.S.T.C. par. 9685).