JOHN E. BOLAND and LILLIAN R. BOLAND, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Boland v. Commissioner
Docket No. 1736-71
United States Tax Court
T.C. Memo 1972-233; 1972 Tax Ct. Memo LEXIS 24; 31 T.C.M. (CCH) 1145; T.C.M. (RIA) 72233; November 21, 1972, Filed Howell C. Mette, for the petitioners. Edward L. Newberger, for the respondent. *25 TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined deficiencies in petitioners' income tax as follows: Year
Deficiency
1964
$7,357.98
1965
2,538.89
1966
2,267.41
1967
5,732.85 Several issues having been resolved by the parties, the only question remaining is whether payments made by petitioner John E. Boland to the estate of his deceased partner were made to purchase his former partner's interest or in liquidation of that interest. All of the facts have been stipulated and are so found. John E. Boland (hereinafter referred to as petitioner) and Lillian R. Boland, husband and wife, resided in Harrisburg, Pennsylvania, at the time the petition herein was filed. Joint income tax returns for the years in question were filed with the district director of internal revenue at Philadelphia, Pennsylvania. Lillian R. Boland is a party hereto solely because she joined in filing such returns. Prior to July 7, 1961, petitioner was in the business of selling life and casualty insurance under the name "John E. Boland Agency" in Harrisburg, Pennsylvania. Also prior to that date, George Winters (hereinafter referred to as Winters) *26 was in the business of selling primarily automobile insurance under the name "George Winters Insurance Agency" in Harrisburg, Pennsylvania. On July 7, 1961, petitioner and Winters executed an agreement whereby, effective January 1, 1962, each transferred his insurance business to a partnership to be known as the "Winters-Boland Agency" (hereinafter referred to as the partnership). The agreement provided that petitioner and Winters would each have a 50-percent interest in the partnership, with petitioner agreeing, under paragraph 4 thereof, to pay Winters $30,000 in five equal annual installments, commencing January 1, 1962, in order to equalize the difference in value between their individual businesses. The agreement further provided as follows: 6. In the event of the death, before January 1, 1962, of either of the parties hereto, the surviving party shall have the first opportunity (the right of first refusal) to purchase from the fiduciary representative of the estate of the deceased, all assets and accounts of the deceased's Insurance Agency; the value of such assets and accounts shall be determined by three professional insurance men, one to be selected by the said representative *27 of the estate of the deceased, one by the surviving party, and the third to be named by the two so selected. 7. In the event of the death, after January 1, 1962, of either of the parties hereto, the surviving party, if it be Boland, shall have the first opportunity (also the right of first refusal) to purchase from the fiduciary representative of the estate of the deceased, all assets and accounts of the Winters-Boland Agency upon the same terms and conditions as contained in paragraph six, with due consideration given to outstanding obligations in number four above. However, should the surviving party be Winters, then he shall have the first opportunity (also the right of first refusal) to purchase from the fiduciary representative of the estate of the deceased, all assets and accounts of the Agency based on the same basis as item six above. [Emphasis supplied.] In the fall of 1963, Winters suffered a heart attack and was hospitalized for approximately two months. After his discharge from the hospital, he was partially disabled until his death on May 8, 1964, spending only a few hours in the partnership office on the days when he was able to come to work. On June 1, 1964, petitioner *28 and Ethel L. Winters, the administratrix of Winters' estate, entered into the following agreement: BILL OF SALE @THIS AGREEMENT made this 1st day of June, A.D., 1964, between ETHEL L. WINTERS, Administratrix of the Estate of George Winters, Deceased, AND JOHN E. BOLAND, an individual. WHEREAS, during his lifetime, George Winters was a partner with John E. Boland, in an insurance agency business conducted under the name of Winters-Boland Agency, and WHEREAS, George Winters died on May 8, 1964, and Letters of Administration have been issued on his estate to Ethel L. Winters, and WHEREAS, the said John E. Boland desires to purchase the interest of the Estate of George Winters in said business, and WHEREAS, the parties have agreed upon the terms of sale of said interest, NOW, THEREFORE, THIS AGREEMENT WITNESSETH: That the said Ethel L. Winters, Administratrix of the Estate of George Winters, for and in consideration of the sums hereinafter mentioned, does hereby sell, assign, transfer and quitclaim unto John E. Boland, all of the right, title and interest owned by the late George Winters in and to the accounts, assets and good will of the insurance agency business known *29 as Winters-Boland Agency, 2350 Herr Street, Harrisburg, Pennsylvania, including the right to continue and conduct said business in the name "Winters-Boland Agency." The said John E. Boland does hereby agree to pay for said business a total sum of Thirty-Seven Thousand, Five Hundred ($37,500.00) Dollars, against which amount a credit of Eight Thousand ($8,000.00) Dollars is due for monies paid to George Winters during 1964, prior to the date of his death, leaving a balance owing as of this date of Twenty-Nine Thousand, Five Hundred ($29,500.00) Dollars, which shall be paid as follows: The sum of Eight Thousand ($8,000.00) Dollars at the signing of this Agreement, the receipt of which is acknowledged, and the balance of Twenty-One Thousand, Five Hundred ($21,500.00) Dollars at the rate of Five Hundred ($500.00) Dollars per month the first payment due July 1, 1964, and on the first day of each month thereafter, until paid in full, without interest. As collateral for the payment of this obligation, the said John E. Boland agrees that at the signing of this Agreement he and his wife will execute an installment judgment note for the balance remaining hereunder, and that he will secure *30 life insurance upon his life, naming Ethel L. Winters as beneficiary, which insurance he hereby agrees to keep in force until this obligation is paid in full and which insurance shall be maintained at all times in an amount sufficient to pay the balance owing at any particular time. [Emphasis supplied.] The total sales price of $37,500 was arrived at by multiplying the total commissions of the partnership in the year preceding the sale by a factor of 1.5, which the parties have stipulated is generally regarded as the fair market price for the goodwill or expirations of this kind of business. The partnership reported its income and deductions on the cash receipts and disbursements basis for Federal income tax purposes. On May 8, 1964, the partnership had the following assets, with the depreciated cost basis indicated Goodwill and insurance expiration lists
0
Files and records
0
Furniture and fixtures, consisting of file cabinets, Polaroid camera, typewriters
$ 1,072.00
Accounts receivable
0
Cash
10,043.89
The partnership had outstanding liabilities to insurance companies on May 8, 1964, at least in the amount of $10,570.95, representing premiums collected *31 from policyholders during the months of March and April 1964. All liabilities of the partnership were assumed and paid by petitioner. At the time of the transaction, petitioner insisted on obtaining, and did obtain, the right to use the home telephone number of Winters because so many of the customers of the partnership were personally acquainted with Winters. The name "George Winters" continued to appear in the local telephone directory as follows: Winters George ins 2150 Herr Hbg--234-3205 4122 Crestvw Rd Hbg---545-1043 2150 Herr Street was the address, and 234-3205 the telephone number, of the partnership. 4122 Crestview Road was the home address, and 545-1043 the home telephone number, of petitioners. On June 17, 1964, petitioner filed a fictitious name registration with the Prothonotary of Dauphin County and the Secretary of Commonwealth for the name "Winters-Boland Agency." During Winters' lifetime, the partnership maintained a bank account in the name "Winters-Boland Agency." This was the only bank account ever maintained by the partnership both before and after the death of Winters. After the death of Winters, the bank account became the sole property of petitioner. *32 All of the checks paid to Ethel Winters as administratrix were drawn on this bank account. Actual payments made pursuant to the bill of sale of June 1, 1964 may be summarized as follows: 6/1/64 down payment
$ 8,000.00
Five $500 monthly payments, 1964
2,500.00
Twelve $500 monthly payments, 1965
6,000.00
Twelve $500 monthly payments, 1966
6,000.00
Seven $500 monthly payments, 1/1/67 to 6/30/67
3,500.00
7/10/67 final payment 3,500.00
$29,500.00
On the 1964 income tax return filed by Ethel L. Winters and George Winters (deceased), the transaction for the calendar year 1964 was reported as the sale or exchange of a capital asset held for more than six months. The question before us is whether the transaction between petitioner and the administratrix of Winters' estate constituted (a) the purchase by petitioner of Winters' partnership interest, in which event petitioner would not be entitled to reduce his taxable income by the payments he made, or (b) payments in liquidation of Winters' partnership interest in respect of "unrealized receivables" or of undesignated goodwill, which fall within the exceptions specified in section 736(b) (2), in which event *33 petitioner would be entitled to such a reduction. [1] Respondent subscribes to the former position, petitioner to the latter. We agree with respondent. *34 The provisions of the Internal Revenue Code dealing with the tax treatment of the transactions of the type involved herein have been critically and thoroughly analyzed by this Court on a previous occasion. See David A. Foxman, 41 T.C. 535, 549-552 (1964), affd. 352 F.2d 466 (C.A. 3, 1965). In that case, we emphasized that Congress intended to provide partners with considerable latitude to make arrangements for a "sale" or "liquidation" of partnership interests as they saw fit in arm's-length negotiations, recognizing that the tax consequences could have a diverse impact on each party to the transaction, depending upon the route selected. In so doing, we stated that "we should be slow to give a different meaning to the arrangement which the partners entered into among themselves than that which the words of their agreement fairly spell out" (see 41 T.C. at 553), and, on this basis, held that a "sale" occurred. Concededly, Foxman involved a three-man, and not a two-man, partnership. But, contrary to petitioner's contention, we think this is a distinction without a difference in the context of this case, although we recognize the legal anomaly *35 which occurs in the two-man situation. See Willis on Partnership Taxation, p. 441 (1971). Cf. section 1.736-1(a)(6), Income Tax Regs. Indeed, we have applied the admonition of Foxman to a two-man partnership ( Andrew O. Stilwell, 46 T.C. 247 (1966)). We follow the same path to decision herein. The original partnership agreement spoke in terms of an opportunity "to purchase" by the surviving partner. The document executed by petitioner and the administratrix of Winters' estate, entitled "Bill of Sale," states that petitioner is acting in his individual capacity; recites that petitioner desires "to purchase" Winters' interest; and uses the words "sale" and "sell, assign, transfer and quitclaim," terms commonly associated with a sale rather than a liquidation. See Andrew O. Stilwell, supra at 250. Petitioner points out that the name of the partnership was retained, Winters' name was listed in the telephone directory with petitioner's home and business numbers beside it until 1970, and payments to the estate were made out of the checking account used by the partnership. He contends that these elements negate the statements in the *36 agreement and point to a liquidation rather than a sale. The problem with these counterbalancing indicia of a liquidation is that they are of minimal significance where a two-man partnership is terminated and one partner intends to continue the business. In this context, their presence is as consistent with a finding of a sale as with a finding of a liquidation. The case of Fred Frankfort, Jr., 52 T.C. 163 (1969), heavily relied upon by petitioner, is clearly distinguishable. The focus of that case was whether the amounts involved represented payments on account of "unrealized receivables" and not whether the transaction involved a "sale" or "liquidation." [2]
We recognize that, in emphasizing the formalities of handling the type of transaction herein, the courts may have put a premium on draftsmanship, [3] thereby constructing a tax trap for the unwary. Cf. Waltham Netoco Theatres, Inc., 49 T.C. 399, 404 (1968), *37 affd. 401 F.2d 333 (C.A. 1, 1968). But, in light of the possibly differing tax consequences involved, it is difficult to perceive which of the parties should be made the victim of such unwariness.[4]
We hold that the payments by petitioner were made *38 to purchase Winters' partnership interest and that section 736 is inapplicable. In view of this conclusion, we need not delve into the question whether the payments were on account of "unrealized receivables." We are constrained to note, however, that there is no evidence that petitioner had any right to future commissions which would bring the payments within the ambit of that term as used in sections 736(b) (2) (A) and 751(c). Cf. United States v. Woolsey, 326 F.2d 287, 291 (C.A. 5, 1963) (an existing management contract); Roth v. Commissioner, 321 F.2d 607, 610-611 (C.A. 9, 1963) (an existing contractual right to receive income from a motion picture); Frank A. Logan, 51 T.C. 482, 485-486 (1968) (unbilled legal fees previously earned).[5] Petitioner's expectation that renewals of insurance business would be forthcoming would not, in our opinion, give rise to a right to receive income required by the definition of "unrealized receivables" in section 751(c).[6] Cf. Miller v. United States, 181 Ct. Cl. 331 (1967) (20 A.F.T.R. 2d 5569, 67-2 U.S.T.C. 9685) (expectation of future business did not give rise to an unrealized receivable); *39 Moore v. United States, an unreported case ( D. Col. 1964, 14 A.F.T.R. 2d 5602, 64-2 U.S.T.C. 9785) (casualty insurance expirations not considered unrealized receivables). Similarly, since section 736 is inapplicable, it is of no moment that the payments may have represented undesignated goodwill. Cf., e.g., Marsh & McLennan, Inc., 51 T.C. 56, 63 (1968), affd. 420 F.2d 667 (C.A. 3, 1969); V. Zay Smith, 37 T.C. 1033 (1962), affd. 313 F.2d 16 (C.A. 10, 1962).
To reflect the concessions of the parties, Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954, as amended. SEC. 736. PAYMENTS TO A RETIRING PARTNER OF A DECEASED PARTNER'S SUCCESSOR IN INTEREST. (a) Payments Considered as Distributive Share or Guaranteed Payment.--Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, except as provided in subsection (b), be considered-- (1) as a distributive share to the recipient of partnership income if the amount thereof is determined with regard to the income of the partnership, or (2) as a guaranteed payment described in section 707(c) if the amount thereof is determined without regard to the income of the partnership. (b) Payments for Interest in Partnership.-- (1) General rule.--Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, to the extent such payments (other than payments described in paragraph (2)) are determined, under regulations prescribed by the Secretary or his delegate, to be made in exchange for the interest of such partner in partnership property, be considered as a distribution by the partnership and not as a distributive share or guaranteed payment under subsection (a). (2) Special rules.--For purposes of this subsection, payments in exchange for an interest in partnership property shall not include amounts paid for-- (A) unrealized receivables of the partnership (as defined in section 751(c)), or (B) good will of the partnership, except to the extent that the partnership agreement provides for a payment with respect to good will.↩
2. We note that the payments were made under the partnership agreement, which provided for the obligations of the "surviving partner," and that the Court treated the transaction as a liquidation of the deceased partner's interest under section 736. See 52 T.C. at 170↩, fn. 3.
3. A noted commentator has spelled out in detail the magic words designed to provide a safe harbor to a taxpayer in petitioner's position. See Willis on Partnership Taxation, pp. 441-442 (1971). Cf. George Edward Quick Trust, 54 T.C. 1336, 1343, fn. 11 (1970), affirmed per curiam 444 F.2d 90↩ (C.A. 8, 1971).
4. Compare the requirement that, at a minimum, strong proof must be adduced to overcome an allocation of payment to a covenant not to compete. See, e.g., J. Leonard Schmitz, 51 T.C. 306, 315-318 (1968). Compare also the differing consequences, depending upon whether the acquisition of stock is deemed to be a redemption by the corporation or an acquisition by another shareholder. See, e.g., Holsey v. Commissioner, 258 F.2d 865 (C.A. 3, 1958), reversing 28 T.C. 962 (1957), and Wall v. United States, 164 F.2d 462↩ (C.A. 4, 1947).
5. Compare also Herman M. Hale, T.C. Memo. 1965-274↩ (an existing contractual right to share in future profits). 6. Conceivably, such a right may have existed with respect to some existing insurance policies, particularly those involving life insurance, but the record herein provides no basis for dealing with this problem.↩