FRANK DeMARCO AND JACQUELYN DeMARCO,
PETITIONERS *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 2002-85.        Filed August 25, 1986.

*William T. Appleyard*, for the petitioners.
*Mae J. Lew*, for the respondent.

OPINION

RAUM, *Judge*: The Commissioner determined a deficiency in petitioners' 1982 income tax in the amount of $48,081. The sole issue for decision is whether petitioners are entitled to a credit under section 38, I.R.C. 1954, in the amount allowed by section 46(a)(2)(F) with respect to property qualifying under section 48(g) as a rehabilitated building. Resolution of this issue requires a determination of whether petitioners made an election under section 168(b)(3) to use the straight line method of depreciation with respect to their rehabilitation expenditures. Entitlement to the rehabilitation credit is, in section 48(g)(2)(B), conditioned on the petitioners' giving up the benefits of the accelerated method of depreciation described in section 168(b)(1) and (2) of the Accelerated Cost Recovery System (ACRS) by electing, under section 168(b)(3), to use the optional straight line method of depreciation described therein. The case was submitted fully stipulated.

At the time the petition herein was filed, petitioners were husband and wife residing in Winthrop, Massachusetts.

In 1973, petitioners purchased and placed in service an old factory building located in Everett, Massachusetts. They leased this building to the Middlesex Manufacturing Co., of which petitioner-husband is the majority stockholder and petitioners' children are the owners of the remaining outstanding stock. In 1982, petitioners made the improvements to the building which give rise to the present controversy. These improvements cost petitioners $360,294. They were completed and placed in service in November of 1982.

Petitioners filed a joint Federal income tax return (the original return) and an amended return for the year 1982. On both returns, they reported on Schedule E "Rents received" from the factory building in the amount of $60,000. On Schedule E in their original return they deducted $14,066 depreciation from the "Rents received". This $14,066 depreciation was shown on Form 4562 "Depreciation and Amortization" as relating to four items of "nonrecovery property": the factory building itself, and improvements or additions made to the building in 1977, 1978, and 1979-80. For each of these items of depreciation,

the "Method of figuring depreciation" that was indicated on Form 4562 was the straight line method. The $360,294 improvements made in 1982 were not included in the assets depreciated on petitioners' original 1982 return, and they were not otherwise reflected on that return. The parties have stipulated that these 1982 improvements "were neither expensed nor capitalized" on petitioners' original return.

Petitioners filed an amended return for 1982 on September 23, 1983, on which they claimed an additional depreciation deduction in the amount of $54,044, attributable to depreciation of the $360,294 improvements. On the Form 4562 accompanying the amended return, petitioners listed the improvements in section B "Depreciation of recovery property" as "5-year property" to be depreciated over a "Recovery period" of "5 yrs."[1] Petitioners identified the "Method of figuring depreciation" used as "ACRS" and the percentage of the cost of the improvements which was depreciated as "15%". This 15-percent figure is the applicable percentage shown in the table in section 168(b)(1) for use in the first year of a 5-year recovery period. That table from which petitioners derived their depreciation percentage embodies the "Prescribed method" under section 168 which, for 3-year, 5-year, 10-year, and 15-year public utility property that was placed in service between 1981 and 1984, "approximate[s] the benefit of using the 150-percent declining balance method for the early years of the recovery period with a switch to the straight-line method for the remainder of the recovery period, including the use of a 'half-year convention' for the year of acquisition".[2] S. Rept. 97-144, at 50 (1981). On their amended return petitioners also claimed, in connection with the improvements, a 20-percent rehabilitation credit in the amount of $72,059, only $48,083[3] of which was used in 1982 and the remainder of which was carried over to 1983.

---

[1] If petitioners had elected under sec. 168(b)(3) to use the optional straight line method of depreciation, they would have had the choice of depreciating the improvements over specified longer recovery periods.

[2] If petitioners had instead used the elective straight line method of sec. 168(b)(3) over the 5-year period shown on their return, the applicable percentage for depreciation would be 10 percent because "If the straight-line method is elected, a half-year of cost recovery is allowable for the year the property is placed in service". S. Rept. 97-144, at 52 (1981), 1981-2 C.B. 427.

[3] There is an unexplained $2 difference between this $48,083 amount which appears from the return and is stipulated to be the amount of the credit used in 1982, and the $48,081 amount which the Commissioner claims as a deficiency.

In his notice of deficiency, the Commissioner modified in two ways the petitioners' treatment of the 1982 improvements as shown on their amended return. First, the Commissioner reduced the depreciation deduction attributable to the improvements from the $54,044 claimed to $7,206. This reduction resulted from his determination that the improvements were correctly depreciated over a "useful life of 15 years instead of [the] 5 years reported on your return". The Commissioner, in his determination, did not change petitioners' depreciation method to the straight-line method, but merely lengthened the recovery period over which the appropriate accelerated depreciation method under section 168(b) was to be used.[4]

Second, the Commissioner disallowed the rehabilitation investment credit taken with respect to the improvements "because the improvements do not qualify for the investment credit under Section 38". The sole basis that has been presented to this Court for disallowing the credit is that petitioners did not make the election to use straight line depreciation upon which section 48(g)(2)(B)(i), I.R.C. 1954, conditions entitlement to the rehabilitation investment credit. Since petitioners concede the correctness of the Commissioner's determination of the recovery period, the only issue before us is the correctness of his determination that petitioners did not make the required election and therefore are not eligible for the rehabilitation tax credit.

The improvements, and related expenditures, for which petitioners seek a tax credit were made in 1982. As effective for that year, section 46(a)(2)(F), I.R.C. 1954, allows a credit against income tax computed as a percentage of the taxpayer's "qualified rehabilitation expenditures". The credit, however, is conditioned on the expenditures coming within the definition of "qualified rehabilitation expendi-

[4]The Commissioner thus accepted petitioners' option to use an accelerated method, but found that petitioners had applied the wrong accelerated method by using the table in sec. 168(b)(1) with respect to "5-year" property. In correcting the situation, the Commissioner followed the accelerated method formula prescribed in sec. 168(b)(2) for "15-year real property". That method is embodied in tables which are drawn up by the Secretary "in accordance with use of the 175 percent declining balance method * * * switching to the method described in sec. 167(b)(1) at a time to maximize the deduction allowable under subsection (a)" and "determined on the basis of the number of months" in the first year the property is placed in service. Sec. 168(b)(2)(A). Petitioners have not contested the Commissioner's adjustment thus reducing the amount of allowable depreciation.

ture[s]" set out in section 48(g)(2), I.R.C. 1954. That definition, in section 48(g)(2)(B)(i), specifies that:

(B) * * * The term "qualified rehabilitation expenditure" does not include—
    (i) * * * Any expenditures with respectto which an election has *not* been made under section 168(b)(3) (to use the straight-line method of depreciation). [Emphasis supplied.]

The effect of section 48(g)(2)(B) is to exclude those expenditures "with respect to which an election has not been made" from the definition of qualified expenditures, and thereby to condition the availability of the credit on the making of the election "under section 168(b)(3) (to use the straight-line method of depreciation)." Section 168(b)(3), I.R.C. 1954, describes the election therein as follows: "the taxpayer may elect * * * the applicable percentage [by which to depreciate] determined by use of the straight-line method". It is apparent from the legislative history accompanying the addition of this election condition to the definition of a "qualified rehabilitation expenditure" that "These [rehabilitation] credits are available only if the taxpayer elects to use the straight-line method of cost recovery with respect to rehabilitation expenditures". Conf. Rept. 97-215, at 221 (1981), 1981-2 C.B. 494; S. Rept. 97-144, at 72 (1981), 1981-2 C.B. 437. The language of section 48(g)(2)(B) itself, the language of its legislative history, and the fact that Congress' addition of the election condition coincided with its adoption of the Accelerated Cost Recovery System,[5] make it clear that the purpose of the election provision is to require the taxpayer to choose the benefits of either the accelerated depreciation method provided in ACRS or the rehabilitation tax credit. The taxpayer is thus to be entitled to one of these benefits, but not both, and is required to make his election in a specified manner. We hold that petitioners have failed to do so.

Since the election required to be made by section 48(g)(2)(B) is an election under section 168(b)(3), the Code provision governing the "Manner and time for making elections" under section 168 applies to the election here.

---

[5]Both were enacted as part of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, 203, 237.

That provision is section 168(f)(4) and in relevant part[6] it demands that:

> (B)(i) * * * any election under this section shall be made on the taxpayer's return of the tax imposed by this chapter for the taxable year concerned.
>
>   *  *  *  *  *  *  *
>
> (C) * * * Any election under this section, once made, may be revoked only with the consent of the Secretary.

Consequently, to qualify for the credit, petitioners must have elected, in accordance with section 168(f)(4)(B),[7] to depreciate the 1982 improvements using the straight line method. In section 168(f)(4)(B)(i), Congress prescribed that

---

[6]The parties both agree that sec. 168(f)(4)(B)(ii) is not relevant to the election with respect to the improvements that are required to be made by petitioners here. That clause of subparagraph (f)(4)(B) is entitled "Special rule for qualified rehabilitated buildings" and it applies to an election with respect to the original building which has become the object of a rehabilitation effort. It was added by the Technical Corrections Act of 1982, Pub. L. 97-448, 96 Stat. 2371-2372, in order to remedy a perceived problem caused by the combination of two provisions added to the Code in 1981 in the Economic Recovery Tax Act, Pub. L. 97-34. Those two provisions are, first, sec. 168(f) and, second, sec. 48(g)(2)(B). Sec. 168(f) requires that components of section 1250 property be depreciated using the same method as is used for the building itself. It allows an exception to that rule for substantial improvements made 3 years or more after the building was placed in service. For substantial improvements, such as rehabilitation expenses, made within 3 years of the taxpayer's placing the building in service, the improvements must be depreciated using the same method as is used for the building. Under sec. 48(g)(2)(B), a credit is available for the expenses of rehabilitation improvements only if those improvements are depreciated using the optional straight line method in sec. 168(b)(3). A problem arose when these two Code sections, in combination, were applied to a taxpayer who had chosen an accelerated method of depreciating his building when he first placed it in service, and then, within the 3-year period made a rehabilitation improvement to the building. In this situation, the taxpayer would be *required* under sec. 48(g)(2)(B) to elect straight line depreciation of the improvements in order to be eligible for a rehabilitation credit *and* he would be *prohibited* under sec. 168(f) from electing straight line depreciation of the improvements because the building itself had been depreciated using an accelerated method. To remedy this problem affecting rehabilitation improvements made within the 3-year period, Congress added sec. 168(f)(4)(B)(ii). In so doing, the committees explained, it allowed the taxpayer to "elect the straight-line method for the building shell at any time within 3 years after the shell is placed in service by the taxpayer". H. Rept. 97-794, at 8; S. Rept. 97-592, at 10, 1983-1 C.B. 478. Since the election to be made in this case is an election with respect to the improvements and not an election with respect to the building shell, sec. 168(f)(4)(B)(ii) is inapplicable in this case. Here, petitioners put the building itself in service in 1973, some 9 years prior to the improvements in issue, and, beginning in 1973, used the straight line method of depreciation for the building itself as well as for the nonrehabilitation improvements made in 1977, 1978, and 1979-80. The agreement of the parties herein that sec. 168(f)(4)(B)(ii) is inapplicable is consistent with and undoubtedly reflects the foregoing analysis.

[7]The parties also discuss, on brief, the requirements of Proposed Reg. sec. 1.168-5(e)(2) and respondent also notes, in his reply brief, the requirements of Temporary Reg. sec. 5c.0, T.D. 7793, 46 Fed. Reg. 51907 (Oct. 23, 1981), 1981-2 C.B. 62. Given the conclusion reached herein based on the requirements of the Code itself, we need not consider the applicability of either of these regulations, both of which contain more stringent requirements for the time and manner of making elections than does the naked language of the Code itself. It is clear that a contrary result would not be mandated by these regulations.

the election be made "on the taxpayer's return * * * for the taxable year concerned". Petitioners are required to follow Congress' prescription in order that their election be effective. *Riley v. Commissioner*, 311 U.S. 55, 58 (1940). This, however, petitioners simply did not do.

Nowhere on either their 1982 original or their 1982 amended return,[8] or on any attachment to those returns, did petitioners in any way indicate that they chose to use the straight line method[9] which would make available to them the rehabilitation credit claimed. Instead, in their original return, they did not report the rehabilitation expenses at all,[10] and in their amended return, they both depreciated their rehabilitation expenses using the accelerated method in section 168(b)(1) and claimed a rehabilitation credit with respect to those expenses. In so doing, they failed to meet even the most minimal requirements for the making of a valid election. A valid election will not be found to be made unless the taxpayer "inform[s] the Commissioner that an election has been made", *Knight-Ridder Newspapers v. United States*, 743 F.2d 781 (11th Cir. 1984); "evidence[s] an affirmative intent * * * to make the required election and be bound thereby", *Atlantic Veneer Corp. v. Commissioner*, 85 T.C. 1075, 1082-1083 (1985); and "effectively commit[s] itself to employ such [elected] method," *Hewlett-Packard Co. v. Commissioner*, 67 T.C. 736, 743 (1977). Petitioners' election, because it is governed by section 168(f)(4)(C), presents perhaps the strongest case for requiring that the election be made with unquestionable clarity since the election, "once made, may be revoked only with the consent of the Secretary". Sec. 168(f)(4)(C).

To be effective, a taxpayer's election must indicate both an "unequivocal agreement to elect and comply with the

---

[8] We need not decide whether the language of sec. 168(f)(4)(B) requiring an election to be made "on the taxpayer's return" is properly read to disallow an election in an amended return filed after the date for filing a return. Even considering petitioners' untimely filed amended return, we find that no election to use the straight line method has been made.

[9] Petitioners' description on their amended return of their "Method of figuring depreciation" as "ACRS" is, by itself, ambiguous. The Accelerated Cost Recovery System includes both an accelerated method of depreciation and an optional straight line method of depreciation for both personal and real property. It was petitioners' depreciation of the improvements by 15 percent of their cost in the first year of recovery that makes it clear that they are using an accelerated method of depreciation. If petitioners were using the straight line method they would have depreciated the improvements by only 10 percent in that year. See note 2 *supra*.

[10] Petitioners concede, as indeed they must, that they did not make the election to use the alternative straight line method of depreciation on their original 1982 return.

terms of [the elected] section", *Young v. Commissioner*, 83 T.C. 831, 839 (1984), affd. 783 F.2d 1201 (5th Cir. 1986), and an "unequivocal agreement to take the benefits and burdens of [the elected] section," *Valdes v. Commissioner*, 60 T.C. 910, 914 (1973). In this case, petitioners' election must do even more. It must indicate that they chose to take the benefits and burdens of the rehabilitation credit, and it must indicate that they chose to forgo the benefits and burdens of the accelerated method of depreciation allowed under section 168(b). Petitioners' returns do nothing of the sort.

Their original return does not reflect the rehabilitation expenses at all; the parties have stipulated that the election was not made on that return. Petitioners' amended return reflects both (1) their use of the accelerated method of depreciation embodied in section 168(b)(1), not the required straight line method, and (2) their claim of a rehabilitation credit with respect to the improvements. The Code provisions allowing for a rehabilitation credit require that the taxpayers choose one of those favorable tax treatments or the other. Nonetheless, petitioners depreciated the improvements on their return using the accelerated method, and then still claimed the credit. Their return reveals, at best, only ambiguous intentions. It certainly does not indicate that they meant to give up the benefits of accelerated depreciation in order to qualify for the credit. Consequently, we find that the election not to use the accelerated method of depreciation, which election would qualify them for the rehabilitation credit, was not made on that return.

Petitioners contend that they "should be allowed" to elect the straight line method of depreciation "on an amended return filed within the statute of limitations". We have found, on the record in this case, that they did not so elect straight line depreciation on their amended return or on any other return. In these circumstances we refuse to address the hypothetical question whether petitioners "should be allowed" to make the required election on an amended return filed after the time for filing a return but before the statute of limitations for the tax year has run. Only if petitioners had made such an election on such a return would we be faced with that question. As it is, petitioners

have made no election under section 168(b)(3) and, as a result, are ineligible for the credit in section 38 claimed on the basis of rehabilitation expenditures.

---

In *Estate of Rosenberg v. Commissioner*, 86 T.C. 980, 986-987, 988-989 (1986), we recently had occasion to express exasperation at the incredible complexity of certain provisions of the Internal Revenue Code. The present case, involving entirely different provisions of the Code, is but a further example of its complexity.[11] What we said in *Foxman v. Commissioner*, 41 T.C. 535, 551 n. 9 (1964), affd. 352 F.2d 466 (3d Cir. 1965), in respect of still other provisions of the Code is equally applicable here:

The distressingly complex * * * nature of the provisions * * * presents a formidable obstacle to [their] comprehension * * * without the expenditure of a disproportionate amount of time and effort even by one who is sophisticated in tax matters with many years of experience in the tax field.

Adapting what we said further in *Foxman*,

If there should be any lingering doubt on this matter one has only to reread [the provisions in their] * * * entirety * * * and give an honest answer to the question whether [they are] * * * reasonably comprehensible to the average lawyer or even to the average tax expert who has not given special attention and extended study to the tax problems [presented by these provisions].

Bearing in mind that the Code is of nationwide application affecting tens of millions of taxpayers, it is difficult to understand why it is so constructed that so many of its provisions can confidently be dealt with by only a comparatively small number of highly skilled or trained persons who have expended a disproportionate amount of time and effort to master the mysteries of the particular intricate provisions under consideration. Surely, there must be a

---

[11]Cf. also *Bolton v. Commissioner*, 77 T.C. 104, 109 (1981), affd. 694 F.2d 556 (9th Cir. 1982); *Pleasanton Gravel Co. v. Commissioner*, 64 T.C. 510, 516 (1975), affd. 578 F.2d 827 (9th Cir. 1978); *Frankfort v. Commissioner*, 52 T.C. 163, 168 (1969); *Foxman v. Commissioner*, 41 T.C. 535, 550, 551 n. 9 (1964), affd. 352 F.2d 466 (3d Cir. 1965); *Van Products, Inc. v. Commissioner*, 40 T.C. 1018, 1028 (1963); *Lewis v. Commissioner*, 35 T.C. 71, 76 (1960).

better way of constructing a fair and workable system of taxation.

*Decision will be entered under Rule 155.*