RAYMOND C. AU AND FELICE L. AU, Petitioners v COMMISSIONER OF INTERNAL REVENUE, Respondent; AUGUSTINE AU AND ADRIENNE AU, Petitioners v COMMISSIONER OF INTERNAL REVENUE, Respondent
Au v. Commissioner
Docket Nos. 10228-88; 10229-88
United States Tax Court
T.C. Memo 1990-203; 1990 Tax Ct. Memo LEXIS 220; 59 T.C.M. (CCH) 458; T.C.M. (RIA) 90203; April 19, 1990
Raymond C. and Felice L. Au, pro se in docket No. 10228-88. Augustine and Adrienne Au, pro se in docket No. 10229-88. Lisa Primavera-Femia and Paul J. Sude, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined the following deficiencies in income tax against petitioners: Petitioner
Docket No.
Year
Amount
Raymond C. & Felice L. Au
10228-88
1982
$ 15,505
Augustine & Adrienne Au
10229-88
1982
[1] 15,876
The petitioners in each docket No. are husband and wife. Each couple filed a joint income tax return for 1982. All of the petitioners resided in Pennsylvania at the time the petitions herein were filed. Petitioners claimed credit for rehabilitation expenditures under section 46(a)(2)(F). [2] At issue *221 is whether section 48(g)(2)(B)(i) prevents such expenditures from being treated as "qualified rehabilitation expenditures." If these expenditures are not qualified rehabilitation expenditures, the parties are in dispute as to the applicable Accelerated Cost Recovery System percentage to be applied to the expenditures. The case was submitted fully stipulated. The male petitioners are brothers. They are dentists, and each was a 50 percent partner in a partnership named Raymond C. and Augustine C. Au, D.D.S. In 1981 the partnership purchased a 40-year old building. The first floor of the building was placed in service as a rental property in 1981. Substantial improvements were made to the building during 1982 to make the upper floors usable. These improvements were completed and placed in service in December 1982. For the year 1981 the building shell was depreciated using the Accelerated Cost Recovery System (ACRS). The parties have stipulated that on its 1982 return, the partnership claimed the rehabilitation credit under section 46(a)(2)(F) *222 [now section 46(a)(3)] [3] for the substantial improvements made to the building. Additionally, the partnership claimed depreciation on both the building and the substantial improvements using ACRS. The depreciation percentage stated on the return for the substantial improvements was 12 percent. Neither the partnership nor the individual petitioners elected the optional straight-line method for depreciating the building and the substantial improvements on their respective income tax returns as provided by section 168(b)(3), which is brought into play by section 48(g)(2)(B)(i). [4] *223 On their 1982 returns, petitioners claimed their distributive shares (50 percent for each couple) of both (1) the accelerated depreciation on the building, and (2) the accelerated depreciation and the rehabilitation credit for the substantial improvements. But, as just noted, they did not make any election on those returns to use the straight-line method of depreciation that was specified in section 48(g)(2)(B)(i) as a condition for classifying the cost of the substantial improvements as "qualified rehabilitation expenditures," nor was any such election made on the partnership returns. The audit of the 1982 partnership and individual returns commenced on or about March 21, 1985. On September 6, 1985, respondent's revenue agent met with petitioners' representative *224 and explained the proposed adjustments regarding the rehabilitation credit and depreciation and the basis therefor. At that meeting, the revenue agent explained that the rehabilitation credit was disallowed because petitioners did not make the required election under section 168(b)(3). At that time petitioners' representative responded orally that "petitioners wished to make the election." (Emphasis supplied. ) The record does not disclose that any written request was ever submitted on behalf of the partnership to make the election, notwithstanding that, in a letter from petitioners' representative to the revenue agent dated September 13, 1985, reference was made to the revenue agent's rejection of what was apparently the oral request on petitioners' behalf to change the ACRS depreciation to straight-line. 1. Petitioners' eligibility for the "qualified rehabilitation expenditures" credit. In DeMarco v. Commissioner, 87 T.C. 518 (1986), affd. in an unpublished opinion 831 F. 2d 281 (1st Cir. 1987), a case with facts substantially similar to the facts herein, we examined the law and the legislative history relating to the rehabilitation credit. Our analysis in that case is equally *225 applicable here, and rather than attempt to restate that analysis in different words, we find it more useful and efficient to quote at length from that opinion (87 T.C. at 521-524): The improvements, and related expenditures, for which petitioners seek a tax credit were made in 1982. As effective for that year, section 46(a)(2)(F), I.R.C. 1954, allows a credit against income tax computed as a percentage of the taxpayer's "qualified rehabilitation expenditures". The credit, however, is conditioned on the expenditures coming within the definition of "qualified rehabilitation expenditure[s]" set out in section 48(g)(2),. I.R.C. 1954. That definition, in section 48(g)(2)(B)(i), specifies that: (B) * * * The term "qualified rehabilitation expenditure" does not include -- (i) * * * Any expenditures with respect to which an election has not been made under section 168(b)(3) (to use the straight-line method of depreciation). [Emphasis supplied.] The effect of section 48(g)(2)(B) is to exclude those expenditures "with respect to which an election has not been made" from the definition of qualified expenditures, and thereby to condition the availability of the credit on the making of the *226 election "under section 168(b)(3) (to use the straight-line method of depreciation)." Section 168(b)(3), I.R.C. 1954, describes the election therein as follows: "the taxpayer may elect * * * the applicable percentage [by which to depreciate] determined by use of the straight-line method." It is apparent from the legislative history accompanying the addition of this election condition to the definition of a "qualified rehabilitation expenditure" that "These [rehabilitation] credits are available only if the taxpayer elects to use the straight-line method of cost recovery with respect to rehabilitation expenditures". Conf. Rept. 97-215, at 221 (1981), 1981-2 C.B. 494; S. Rept. 97-144, at 72 (1981), 1981-2 C.B. 437. The language of section 48(g)(2)(B) itself, the language of its legislative history, and the fact that Congress' addition of the election condition coincided with its adoption of the Accelerated Cost Recovery System, [footnote ref. omitted] make it clear that the purpose of the election provision is to require the taxpayer to choose the benefits of either the accelerated depreciation method provided in ACRS or the rehabilitation tax credit. The taxpayer is thus to be entitled *227 to one of these benefits, but not both, and is required to make his election in a specified manner. * * * Since the election required to be made by section 48(g)(2)(B) is an election under section 168(b)(3), the Code provision governing the "Manner and time for making elections" under section 168 applies to the election here. That provision is section 168(f)(4) and in relevant part [footnote ref. omitted] it demands that: (B)(i) * * * Any election under this section shall be made on the taxpayer's return of the tax imposed by this chapter for the taxable year concerned. * * * (C) * * * Any election under this section, once made, may be revoked only with the consent of the Secretary. Consequently, to qualify for the credit, petitioners must have elected, in accordance with section 168(f)(4)(B), [footnote ref. omitted] to depreciate the 1982 improvements using the straight line method. In section 168(f)(4)(b)(i), Congress prescribed that the election be made "on the taxpayer's return * * * for the taxable year concerned". Petitioners are required to follow Congress' prescription in order that their election be effective. Riley v. Commissioner, 311 U.S. 55, 58 (1940). This, however, *228 petitioners simply did not do. We note that one of the decisions that we relied upon in DeMarco was thereafter affirmed by the Fourth Circuit. Atlantic Veneer Corp. v. Commissioner, 85 T.C. 1075 (1985), affd. 812 F. 2d 158 (4th Cir. 1987). It is undisputed in the present case that on its 1982 return, the partnership claimed the rehabilitation credit for the improvements and claimed depreciation on those improvements using ACRS, but not the straight-line method. The individual partners are bound by the method of depreciation chosen by the partnership with respect to these improvements (see section 703(b)) and in fact did deduct their proportionate share of the rehabilitation credit and the ACRS depreciation claimed on the 1982 partnership return. But section 48(g)(2)(B)(i) makes clear that the rehabilitation credit is available only if the straight-line method of depreciation is elected. And once a method of depreciation is elected, it "may be revoked only with the consent of the Secretary." Sec. 168(f)(4)(C). There is no allegation or evidence that the Secretary consented to a change in the election in this case. Petitioners contend, nevertheless, that they made an effective oral *229 election during the audit of the partnership return, changing the ACRS election to straight-line depreciation, and that this new "election" was timely pursuant to section 168(f)(4)(B)(ii). [5] We disagree. Apart from the requirement of approval by the Secretary, section 168(f)(4)(B)(ii) does not, as petitioners argue, give a taxpayer permission to make a change in the method of depreciating the rehabilitation expenditures from ACRS to straight-line during audit, *230 and certainly not an oral change. Rather, section 168(f)(4)(B)(ii) allows a taxpayer to change his election with respect to the original building under certain circumstances. It does not allow a taxpayer to change his election with regard to the improvements. We considered this matter at length in an extended footnote in DeMarco. We there explained the origin and intended scope of section 168(f)(4)(B)(ii), as follows (87 T.C. at 523 n.6): [S]ec. 168(f)(4)(B)(ii) * * * is entitled "Special rule for qualified rehabilitated buildings" and it applies to an election with respect to the original building which has become the object of a rehabilitation effort. It was added by the Technical Corrections Act of 1982, Pub. L. 97-448, 96 Stat. 2371-2372, in order to remedy a perceived problem caused by the combination of two provisions added to the Code in 1981 in the Economic Recovery Tax Act, Pub. L. 97-34. Those two provisions are, first, sec. 168(f) and, second, sec. 48(g)(2)(B). Sec. 168(f) requires that components of section 1250 property be depreciated using the same method as is used for the building itself. It allows an exception to that rule for substantial improvements made *231 3 years or more after the building was placed in service. For substantial improvements, such as rehabilitation expenses, made within 3 years of the taxpayer's placing the building in service, the improvements must be depreciated using the same method as is used for the building. Under sec. 48(g)(2)(B), a credit is available for the expenses of rehabilitation improvements only if those improvements are depreciated using the optional straight line method in sec. 168(b)(3). A problem arose when these two Code sections, in combination, were applied to a taxpayer who had chosen an accelerated method of depreciating his building when he first placed it in service, and then, within the 3-year period made a rehabilitation improvement to the building. In this situation, the taxpayer would be required [emphasis in original] under sec. 48(g)(2)(B) to elect straight line depreciation of the improvements in order to be eligible for a rehabilitation credit and he would be prohibited [emphasis in original] under sec. 168(f) from electing straight line depreciation of the improvements because the building itself had been depreciated using an accelerated method. To remedy this problem affecting *232 rehabilitation improvements made within the 3-year period, Congress added sec. 168(f)(4)(B)(ii). In so doing, the committees explained, it allowed the taxpayer to "elect the straight-line method for the building shell at any time within 3 years after the shell is placed in service by the taxpayer". H. Rept. 97-794, at 8; S. Rept. 97-592, at 10, 1983-1 C.B. 478. * * * [Emphasis added.] Section 168(f)(4)(B)(ii) is similarly inapplicable in this case. It does not allow petitioners to change the election with respect to the improvements for which the rehabilitation credit is claimed. That section is concerned only with the opportunity to change an election with respect to the original building if certain conditions are met. At the time of the audit of the 1982 returns, the partnership had already made an election to use ACRS to depreciate the building as well as the improvements. There is no evidence that the partnership ever made any appropriate attempt to change depreciation claimed by it to straight-line with regard to either the building or the improvements, let alone that the Secretary ever approved any such alleged attempted change. And, of course, the individual partners *233 are bound by any election made by the partnership in this respect, either originally or pursuant to a permissible change. (Section 703(b)). [6] Thus, petitioners' position is fatally defective here under section 168(f)(4)(B)(ii), not only because satisfactory evidence is lacking that the partnership ever sought to avail itself of those provisions in respect of the building, but also because the individual partners themselves had not made an election, either originally or by appropriate amendment, to use straight-line -- even assuming that they were free to elect a method of depreciation different from that used by the partnership. Petitioners state on brief that "the petitioner filed amended returns to retroactively reduce cost recovery allowances previously claimed." It is unclear to whom "the petitioner" (in the singular) was intended to refer. However, no such amended returns are in the record, and there is no evidence that any such returns *234 were in fact filed. Moreover, if there were any amended returns, we have no way of knowing whether they were returns of both the partnership and the individual partners, or of only the partnership, or of only the partners, or whether in any such returns the amendments sought changes in the election relating to the building or both. In the circumstances, we refuse to address the hypothetical question whether an amended return reducing cost recovery allowances previously claimed would be effective. We also note, as indicated above, that section 703(b) would preclude the individual partners from making an election in respect of the method of depreciation that was different from that made by the partnership. Thus, if petitioners amended only their own returns and the partnership return were not amended, their efforts to make an election different from the election of the partnership would have no effect. Rothenberg v. Commissioner, 48 T.C. 369, 374 (1967). We need not pursue the matter further. We hold that the record fails to show that there was a permissible election to use straight-line depreciation upon which entitlement to a rehabilitation credit depends, and that petitioners *235 are accordingly ineligible for the rehabilitation credit claimed. 2. The applicable ACRS percentage for 1982 rehabilitation expenditures deduction. The parties have stipulated that a second issue before the Court is "Whether, if the Court determines that petitioners are not entitled to the credit, the applicable Accelerated Cost Recovery System percentage for the rehabilitation expenditures is 1%." The Commissioner dealt very summarily with this issue on brief. However, petitioners' brief contained nothing whatever on this point, and we could therefore treat it as having been abandoned by them. In any event, the Commissioner's position appears to be clearly correct. The Government does not disagree that 12 percent would be correct under ACRS if depreciation for 1982 were to be computed on the basis of a full year. However, although the partnership purchased the building in 1981 and placed the first floor in service in that same year, the 1982 improvements to make the upper floors usable were not completed and placed in service until December 1982. To the extent relevant here, the accelerated cost recovery method of depreciating 15-year real property [7] is set forth in section 168(b)(2) *236 [8], as follows: (2) 15-year real property. -- (A) In general. -- In the case of 15-year real property, the applicable percentage shall be determined in accordance with a table prescribed by the Secretary. In prescribing such table, the Secretary shall -- (i) assign to the property a 15-year recovery period, and (ii) assign percentages generally determined in accordance with use of the 175 percent declining balance method (200 percent declining balance method in the case of low-income housing), switching to the method described in section 167(b)(1) at a time to maximize the deduction allowable under subsection (a). For purposes of this subparagraph, the applicable percentage in the taxable year in which the property is placed in service shall be determined on the basis of the number of months in such year during which the property was in service . [9] *237 [Emphasis added.] Section 168(b)(2) clearly requires the applicable percentage to reflect the number of months that the property to be depreciated was actually in service during the taxable year in which the property was placed in service. That "applicable percentage" is determined by reference to "a table prescribed by the Secretary." The General Explanation of the Economic Recovery Tax Act of 1981 prepared by the Staff of the Joint Committee on Taxation states (p. 84) that the "Treasury has prescribed the following" table [10] "containing the accelerated recovery percentages for all 15-year real property (except low-income housing):" The applicable percentage is: (use the column for
If the
the month in the first year the property is placed
recovery
(in service)
year is:
1 2 3 4 5 6 7 8 9 10 11 12 12 11 10 9 8 7 6 5 4 3 2 1 * * * * * * Thus, under ACRS, the applicable percentage for the first year is based on the month of that year that the property is placed in service. [11] That *238 percentage, for property placed in service in December is 1 percent, i.e., one-twelfth of the undisputed annual rate of 12 percent. The validity of the Secretary's table has not been called into question. We hold that the applicable percentage to be applied to the improvements placed in service in December 1982 in this case, is 1 percent, as determined by the Commissioner. Decisions will be entered for the respondent. Footnotes
1. The notice of deficiency sent to Augustine and Adrienne Au states that the deficiency for 1982 amounts to $ 15,876. In their petition, Augustine and Adrienne Au allege that the deficiency determined by the Commissioner for 1982 was in the amount of $ 15,505. The Government admits that allegation in its answer. However, the deficiency notice is before us as part of the stipulated record, and we take the amount determined from the notice itself.↩
2. Unless otherwise indicated all section references herein are to the Internal Revenue Code as in effect and applicable to the year involved.↩
3. Strictly speaking, the credit is allowed under section 38, which, however, provides that the credit is to be in "the amount determined under subpart B of this part." And subpart B consists of sections 46 through 50. Of particular relevance here are section 46 which is captioned "Amount of Credit" and section 48↩ which is captioned "Definitions; Special Rules." 4. Section 48(g)(2)(B)(i), which contains one of the "special rules," relating to the credit, provides that "The term qualified rehabilitation expenditure' does not include -- * * * [a]ny expenditures with respect to which an election has not been made under section 168(b)(3) (to use the straight-line method of depreciation)." The caption to section 48(g)(2)(B)(i) reads "ACCELERATED METHODS OF DEPRECIATION MAY NOT BE USED." These provisions have since been revised to make even more clear that the straight-line method must be used. Section 168(b)(3) provides for an election to use the straight-line method, and section 168(f)(4)↩ specifies the manner and time for making the election.
5. Section 168(f)(4) in its entirety provides: (4) Manner and time for making elections. -- (A) In general. -- Any election under this section shall be made for the taxable year in which the property is placed in service. (B) Election made on return. -- (i) In general. -- Except as provided in clause (ii) any election under this section shall be made on the taxpayer's return of the tax imposed by this chapter for the taxable year concerned. (ii) Special rule for qualified rehabilitated buildings. -- In the case of any qualified rehabilitated building (as defined in section 48(g)(1)), an election under subsection (b)(3) may be made at any time before the date 3 years after the building↩ was placed in service. [Emphasis supplied.]
6. Section 703(b) provides that "Any election affecting the computation of taxable income derived from a partnership shall be made by the partnership [except certain specified elections inapplicable here] shall be made by each partner separately."↩
7. There is no dispute between the parties that the improvements in this case are properly classifiable as 15-year real property. ↩
8. These provisions have since been revised. Sec. 201(a) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2121-2139. ↩
9. In 1983, the last paragraph in section 168(b)(2) was amended by section 102(a)(5) of Pub. L. 97-448, 96 Stat. 2368, effective for property placed in service after December 31, 1980. This amendment defines the term "low-income housing" and makes other minor changes also not relevant herein.
10. This table was also published in Notice 81-16, 1981-2 C.B. 545, 546, and later in Proposed Income Tax Reg. 1.168 2 (b)(2), 49 Fed. Reg. 5943↩ (Feb. 16, 1984). 11. Personal property under ACRS is treated differently. See McKnight v. Commissioner, T.C. Memo. 1990-69↩