MARY ELLEN CEBULA, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7152–91.          Filed July 21, 1993.

*Frederick A. Levy,* for petitioner.
*Ruth M. Spadaro,* for respondent.

OPINION

RAUM, *Judge:* The Commissioner determined an income tax deficiency of $15,070 for petitioner's 1989 taxable year, based on additional tax resulting from a lump-sum distribution received in that year. At issue is whether petitioner is precluded by section 402(e)(4)(B)[1] from utilizing 5-year averaging provided in section 402(e)(1) to compute the tax on a lump-sum distribution received by petitioner on account of her late husband's death prior to his attaining age 59½. For reasons explained hereinafter, we find that petitioner was, by reason of section 402(e)(4)(B), not entitled to use 5-year averaging. The facts have been stipulated.

Petitioner resided in Huntingdon Valley, Pennsylvania, at the time she filed the petition herein. She is the widow of Joseph Cebula (Mr. Cebula), who died in 1988 at the age of 45. He had been employed since 1966 as a faculty member at Philadelphia Community College (the college). Since approximately 1974, Mr. Cebula had been a participant in the retirement plan at the college. The retirement plan, as stipulated by the parties, was a "qualified pension plan, as described in I.R.C. Section 401(a)," which was "exempt from [Federal income] tax pursuant to Section 501(a)." Petitioner was the sole beneficiary of her husband's retirement plan.

After her husband's death, petitioner elected to receive the funds from his retirement plan in a lump-sum distribution. She thereafter received during 1989 four distributions from the plan totaling $174,988.15, her husband's entire balance in the pension plan. The distributions were made as a result of Mr. Cebula's severance from employment at the college due to his death in 1988.

---

[1] Except as otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year at issue.

On her 1989 income tax return, petitioner utilized the 5-year averaging method in computing the tax on $174,784 of the lump-sum distribution. The Commissioner disallowed petitioner's use of 5-year averaging and recalculated the tax on the distribution without such averaging. The parties have stipulated that "the only issue in this case is whether petitioner is entitled to 5-year averaging on the * * * lump sum distribution." Distributions of previously untaxed funds from qualified retirement plans are generally taxed to the recipient in the year (or years) of receipt at the applicable tax rates in effect for such year (or years). Secs. 402(a), 72(a), 1(a). Certain lump-sum distributions are, however, taxed to the recipient under a preferential 5-year averaging scheme[2] set forth in section 402(e)(1). Under section 402(e)(1),[3] such distributions are in effect taxed—subject to certain modifications not at issue herein[4]—as if the distributee received one-fifth of the amount distributed as his only taxable income in each of 5 separate tax years, and the total of the five separate taxes thus computed is payable as part of the tax for the year of receipt. Distributees of a qualifying lump-sum distribution thus get the benefit of lower increments in the tax rates for purposes of determining the amount of tax on the distribution.

The term "lump-sum distribution" is defined in section 402(e)(4)(A), the pertinent parts of which are as follows:

(A) LUMP SUM DISTRIBUTION.—For purposes of this section * * *, the term "lump sum distribution" means the distribution or payment within one taxable year of the recipient of the balance to the credit of an employee which becomes payable to the recipient—

(i) on account of the employee's death,

---

[2] Sec. 1122(a)(2) of the Tax Reform Act of 1986 (TRA 1986), Pub. L. 99–514, 100 Stat. 2085, 2466, replaced the theretofore applicable 10-year averaging with 5-year averaging for distributions received after Dec. 31, 1986.

[3] The pertinent portions of sec. 402(e)(1) are as follows:

(1) IMPOSITION OF SEPARATE TAX ON LUMP SUM DISTRIBUTIONS.—

(A) SEPARATE TAX.—There is hereby imposed a tax (in the amount determined under subparagraph (B)) on the lump sum distribution.

(B) AMOUNT OF TAX.—The amount of tax imposed by subparagraph (A) for any taxable year is an amount equal to 5 times the tax which would be imposed by subsection (c) of section 1 if the recipient were an individual referred to in such subsection and the taxable income were an amount equal to $\frac{1}{5}$ of the excess of—

(i) the total taxable amount of the lump sum distribution for the taxable year, over

(ii) the minimum distribution allowance.

[4] One such modification is that a lump-sum distribution is subject to tax under the 5-year averaging scheme only to the extent that the total taxable amount of the lump-sum distribution for the taxable year exceeds the minimum distribution allowance. Sec. 402(e)(1)(B)(ii) and (C).

(ii) after the employee attains age 59½,

(iii) on account of the employee's separation from the service, or

(iv) after the employee has become disabled (within the meaning of section 72(m)(7))

from a trust which forms a part of a plan described in section 401(a) and which is exempt from tax under section 501 * * *

A lump-sum distribution is thus defined by statute as the distribution of an employee's entire plan balance in a tax-qualified retirement plan where the entire balance is distributed within a single tax year and where the distribution takes place as a result of any one of four specified conditions, namely, the employee's death, attainment of age 59½, separation from the employer's service, or disability.

As already indicated, all of the amounts distributed to petitioner were received by her during 1989 "as a result of [Mr. Cebula's] severance from employment * * * due to his death"; and the sum of the amounts distributed represented her husband's entire balance in "a qualified pension plan * * * described in * * * section 401(a)" and "exempt from tax under * * * section 501(a)". There is, therefore, no question that the payments to petitioner from her husband's retirement plan during 1989 met the requirements for a lump-sum distribution.[5] Not all lump-sum distributions, however, are eligible for the special 5-year averaging treatment provided for in section 402(e)(1). Section 402(e)(4)(B)[6] specifically limits the use of 5-year averaging with respect to lump-sum distributions by providing in pertinent part as follows:

(B) AVERAGING TO APPLY TO 1 LUMP SUM DISTRIBUTION AFTER AGE 59½.— Paragraph (1) [the paragraph providing for 5-year averaging] shall apply to a lump sum distribution with respect to an employee under subparagraph (A) only if—

(i) *such amount is received on or after the employee has attained age 59½,* and

(ii) the taxpayer elects for the taxable year to have all such amounts received during such taxable year so treated.

[Emphasis supplied.]

---

[5] The parties' stipulation that "the only issue in this case is whether petitioner is entitled to [use] 5-year averaging on the * * * lump-sum distribution" implicitly recognizes that the distribution did qualify as a lump-sum distribution.

[6] Sec. 402(e)(4)(B), in its current form, was enacted as TRA 1986 sec. 1122(a)(1)(B), 100 Stat. 2466, and was later amended by Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. 100-647, sec. 1011A(b)(6), 102 Stat. 3473, to reflect technical corrections.

It is the effect of this restrictive provision that forms the basis of the dispute between the parties. The Commissioner maintains that the plain meaning of section 402(e)(4)(B) prevents petitioner from using 5-year averaging in computing the tax on the lump-sum distribution from her husband's retirement plan in 1989, because petitioner's deceased husband (the "employee") had not attained age 59½ (nor would he have attained that age had he lived) at the time of the lump-sum distribution. Petitioner, on the other hand, contends that the limitation on 5-year averaging in section 402(e)(4)(B) does not apply here, because that provision relates only to lump-sum distributions to the employee-participant and not to lump-sum distributions to a designated beneficiary of the employee on account of his death.

Petitioner makes various arguments in support of her position. First, petitioner emphasizes that the limitation on 5-year averaging in subparagraph (B) of section 402(e)(4) refers specifically to lump-sum distributions "with respect to an employee", whereas the definition of lump-sum distribution in subparagraph (A) refers more broadly to amounts that become payable "to the recipient." Petitioner argues that by using the word "employee" in section 402(e)(4)(B), Congress intended to confine the limitation in that subparagraph on the use of 5-year averaging to lump-sum distributions to employees only.

We find petitioner's argument unpersuasive for a number of reasons. First, the use of the words "with respect to"—as opposed to simply using the word "to"—is significant. All distributions from an employee's retirement plan are made "with respect to" that employee, since they represent deferred compensation for his or her years of service with the employer. That is by no means the same as saying that the distributions are necessarily (paid) "to" that employee. We think that, in the absence of any acceptable legislative history suggesting otherwise, the statute should be read to mean exactly what it says. Moreover, petitioner's theory— that section 402(e)(4)(B) applies only to lump-sum distributions to employees—does not square with the wording in clause (ii) of section 402(e)(4)(B). In contrast to clause (i) of section 402(e)(4)(B), which refers to amounts received on or

after the "employee" has attained age 59½,[7] clause (ii) requires the "taxpayer" to elect 5-year averaging for all amounts received during the taxable year. Clause (ii) thus clearly appears to contemplate that 5-year averaging may be used by persons other than the employee whose pension funds are being distributed. Finally, we note that the sub-heading in subparagraph (B) contains no indication whatsoever that lump-sum distributions to employees are to be treated in any manner different from lump-sum distributions to others. The caption merely reads: "Averaging to apply to 1 lump sum distribution after age 59½." We reject petitioner's contention based on the use of the word "employee" in section 402(e)(4)(B).

Petitioner next argues that applying the 59½ year age requirement in section 402(e)(4)(B) to all lump-sum distributions defined in section 402(e)(4)(A), as urged by the Commissioner, "renders portions of section 402(e)(4)(A) superfluous." Petitioner contends that, under such an interpretation of section 402(e)(4)(B), "no matter what the cause for the distribution was, namely, death (sec. 402(e)(4)(A)(i)), attaining age 59½ (sec. 402(e)(4)(A)(ii)), the employee's separation from service (sec. 402(e)(4)(A)(iii)), or * * * disability (sec. 402(e)(4)(A)(iv)), [5-year] lump sum averaging would be available only if the employee reached age 59½." (Pet. Opening Brief at 6.) This, petitioner suggests, "effectively writes [clauses] (i), (iii), and (iv) out of section 402(e)(4)(A)." (Pet. Opening Brief at 6.) However, petitioner erroneously assumes that the sole purpose of section 402(e)(4)(A) in defining the term "lump-sum distribution" is to provide for use of 5-year averaging. Such is not the case. For example, the definition of lump-sum distribution in subparagraph (A) also applies for purposes of the special provision in section 402(e)(4)(J) excluding net unrealized gain on lump-sum distributions involving employer securities. Thus, applying section 402(e)(4)(B) to all lump-sum distributions in no way reads clauses (i), (iii), and (iv) of section 402(e)(4)(A) out of the Code. Those clauses remain essential to other parts of the statute involving lump-sum distributions (apart from 5-year averaging). Significantly, the definition in section

---

[7] Prior to "technical corrections" made by TAMRA sec. 1011A(b)(6), 102 Stat. 3473, clause (i) of sec. 402(e)(4)(B) also referred to attainment of age 59½ by the "taxpayer". As amended, it now refers to attainment of age 59½ by the "employee".

402(e)(4)(A) applies, by its terms, "For purposes of this *section*", rather than simply for purposes of subparagraph (B) of section 402(e)(4). (Emphasis added.)

Finally, petitioner relies upon statements appearing in reports of the House and Senate committees as well as the report of the conference committee in respect of the provisions before us. Apart from some minor differences in organization and phraseology, the reports of the House and Senate committees are nearly identical. See H. Rept. 99-426, at 731-734 (1985), 1986-3 C.B. (Vol. 2) 1, 731-734; S. Rept. 99-313, at 607-611 (1986), 1986-3 C.B. (Vol. 3) 1, 607-611; H. Conf. Rept. 99-841 (Vol. II), at 459-460, 462 (1986), 1986-3 C.B. (Vol. 4) 1, 459-460, 462. And the critical material in these reports is restated in substantially identical language in the Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986, at 721-722 (J. Comm. Print 1987). In particular, petitioner relies upon an extended passage in the Joint Committee Staff's General Explanation to show that Congress, as part of the Tax Reform Act of 1986, amended section 402 "with the intent to prevent *voluntary* abuses of the lump sum distribution rules", and that "Congress did not consider widows who receive lump sum distributions prior to their deceased spouse's attaining age 59½ as an abuse needing rectification." (Pet. Opening Brief at 7.) That passage from the General Explanation, at 721, reads as follows:

> The special 10-year averaging and capital gains provisions for lump-sum distributions (including lump-sum distributions before retirement) under prior law encouraged individuals to withdraw tax-favored funds from tax-favored retirement arrangements before retirement and were inconsistent with the policy of providing individuals with income at retirement. The original purposes of the capital gains and 10-year averaging provisions were to mitigate the effect of the progressive tax structure on individuals receiving all of their benefits in a single year. The same purpose is now served, however, by permitting individuals generally to roll over distributions into an IRA. This results in the individual being taxed only as amounts are subsequently withdrawn from the IRA. *Because rollovers are permitted, income averaging and capital gains treatment are less appropriate incentives to consume retirement monies, and are inappropriate with respect to distributions prior to age 59½.* Thus, Congress believed that capital gains treatment should not be available and that income averaging should be available only on a limited basis and should be adjusted to reflect the decreased need for income averaging, given the tax structure in the Act. [Emphasis supplied.]

We find nothing in that excerpt from the Joint Committee Staff's General Explanation that supports the inference drawn by petitioner; i.e., that Congress intended to carve out a special exception to the age 59½ requirement in section 402(e)(4)(B) for widows of deceased employees. If anything, it suggests precisely the opposite. Petitioner had—just as her husband would have if he had received the distribution during his lifetime—the opportunity to defer tax altogether on the lump-sum distribution by contributing it ("rolling it over") to an individual retirement account (IRA). Sec. 402(a)(5), (7). We, therefore consider it "inappropriate", based on the logic of the statement quoted from the Joint Committee Staff's General Explanation, to accord petitioner the benefit of 5-year averaging "with respect to [a distribution] prior to age 59½." Joint Committee Staff's General Explanation at 721. To do so would in effect place petitioner on an even more favorable footing than that occupied by her husband—the employee on whose behalf the distribution was made—since a distribution to him prior to age 59½ would not have been eligible for averaging treatment.

To the extent that petitioner relies upon the "involuntary" nature of the distribution (as a result of her husband's death), her position is contrary to *Hegarty v. Commissioner,* T.C. Memo. 1992-143. There the taxpayer's employer merged with another corporation, which terminated the employee stock ownership plan in which the taxpayer had participated. He accordingly received a distribution of his entire balance in the plan. The Court held that he was "not entitled to use the 5-year averaging method" since "One of the eligibility requirements [under section 402(e)(4)(B) for using 5-year averaging] is that the employee * * * has attained the age of 59½ at the time of receipt." The receipt of the distribution in *Hegarty* was no more "voluntary" than that in the present case.

We have taken into account all contentions made by petitioner, and hold that petitioner is not entitled to use 5-year

averaging in computing the tax on the lump-sum distribution that she received in 1989.

*Decision will be entered for respondent.*