KATHERINE L. CLARK, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7588–92.     Filed September 14, 1993.

---

[4] See *supra* note 1.

*C. Page Hamrick III,* for petitioner.
*Robin L. Herrell,* for respondent.

OPINION

RAUM, *Judge:* The Commissioner determined a deficiency in income tax of $1,494 against petitioner for the year 1988. The principal issue for decision is whether a distribution received by petitioner during 1988 was a lump sum distribution as defined in section 402(e)(4)(A),[1] and thus whether petitioner was entitled under section 402(e)(1) to use the 10-year averaging method in calculating the tax on the distribution. The facts have been stipulated.

Petitioner was born on January 13, 1934. She resided in Charleston, West Virginia, at the time she filed her petition herein. During 1988, petitioner was employed by Charleston National Bank (the bank) and was a participant in the bank's defined benefit pension plan. The plan was a tax-qualified plan under section 401.

---

[1] Except as otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue.

The bank terminated the plan in 1988. The parties have stipulated that "as a result, the petitioner received a distribution in the amount of $13,179.00 from the plan. The distribution was made within the year 1988 and constituted the petitioner's total accrued benefit under the plan." The parties have further stipulated that "The * * * distribution from the plan was not made to the petitioner on account of separation from service or disability". On her 1988 Federal income tax return, petitioner reported $724.84 in tax on the distribution from the plan, computed by use of the 10-year averaging method. Petitioner also reported additional tax of $1,377.90 on premature distributions from qualified retirement plans, pursuant to section 72(t).[2] Finally, although petitioner apparently did not claim an earned income tax credit when she filed her return, it appears that she received the benefit of such credit when her return was processed by the IRS. The Commissioner's deficiency notice stated:

(a) It is determined that the distribution which you received * * * in the amount of $13,179.00 does not qualify for the 10-year averaging method because you do not meet the requirements of section 402 of the Internal Revenue Code. * * *

(b) It is determined that your tax on an IRA is $1,317.90 ($13,179.00 times 10 percent) in lieu of $1,377.90 as shown in your return.[3]

(c) It is determined that you are not entitled to earned income credit shown on your return in the amount of $299.00 because you do not meet the requirements of section 32 of the Internal Revenue Code.

With respect to the $299 earned income credit in adjustment (c), the parties have stipulated as follows:

If it is determined that the petitioner's distribution from the plan in the amount of $13,179.00 does not qualify for special ten-year averaging, the notice of deficiency's adjustment disallowing the earned income credit in the amount of $299.00 is correct. If it is determined that the petitioner's distribution does qualify for special ten-year averaging, then the petitioner is entitled to the earned income credit in the amount of $299.00.

---

[2] Sec. 72(t) provides generally for a 10-percent additional tax on distributions from qualified retirement plans received prior to attaining age 59½. The additional tax reported by petitioner pursuant to sec. 72(t) was 10 percent of $13,779, which was the sum of the $13,179 distribution to petitioner of her total accrued benefit under the plan, as shown in a Form 1099-R, plus a $600 payment to her by the bank as reflected in a Form W-2P.

[3] The Commissioner's adjustment of the sec. 72(t) 10-percent tax was based on the $13,179 distribution and not on the $13,779 figure used by petitioner on her return. See supra note 2. Although this adjustment was favorable to petitioner in the computation of the sec. 72(t) tax, her petition raised the issue whether she should have been subject to any additional tax under sec. 72(t).

Thus, only adjustments (a) and (b), involving petitioner's use of 10-year averaging and the addition to tax under section 72(t), remain in dispute. We sustain the Commissioner with respect to each of these issues.

### 1. *10-Year Averaging*

Distributions of previously untaxed funds from tax-qualified pension or profit-sharing plans are generally fully taxable to the recipients in the year of receipt. Sec. 402(a). Certain distributions known as lump sum distributions are, however, taxed in certain circumstances under a more favorable set of rules.

With respect to lump sum distributions received prior to January 1, 1987, section 402(e)(1) as then in effect provided a preferential 10-year averaging method for computing the tax on such distributions. For lump sum distributions received after December 31, 1986, section 402(e)(1)[4] provides generally for a more limited 5-year averaging method as a result of the enactment of the Tax Reform Act of 1986 (TRA), Pub. L. 99-514, sec. 1122(a)(2), 100 Stat. 2085, 2466.[5] Finally, TRA sections 1122(h) and 1124, 100 Stat. 2470, 2475, provide transitional rules under which lump sum distributions made after December 31, 1986, will, in certain limited circumstances, nonetheless be taxed under the 10-year (rather than the 5-year) averaging scheme. Petitioner contends that the $13,179 distribution to her in 1988 qualified for 10-year averaging under TRA section 1122(h).

Since section 402(e)(1)(A) imposes the separate tax "on the lump sum distribution", the threshold question is whether the distribution to petitioner qualified as a lump sum dis-

---

[4] Sec. 402(e)(1) has been redesignated sec. 402(d) by the Unemployment Compensation Amendments of 1992, Pub. L. 102-318, sec. 521(a) and (b), 106 Stat. 290, 300-310, 313, applicable to distributions after Dec. 31, 1992. However, the distribution here at issue occurred prior to that date.

[5] Sec. 402(e)(1) provides in pertinent part as follows:

SEC. 402(e). TAX ON LUMP SUM DISTRIBUTIONS.—

(1) IMPOSITION OF SEPARATE TAX ON LUMP SUM DISTRIBUTIONS.—

(A) SEPARATE TAX.—There is hereby imposed a tax (in the amount determined under subparagraph (B)) on the lump sum distribution.

(B) AMOUNT OF TAX.—The amount of tax imposed by subparagraph (A) for any taxable year is an amount equal to 5 times the tax which would be imposed by subsection (c) of section 1 if the recipient were an individual referred to in such subsection and the taxable income were an amount equal to ⅕ of the excess of—

(i) the total taxable amount of the lump sum distribution for the taxable year, over

(ii) the minimum distribution allowance.

tribution as that term is defined in the statute, regardless of whether the averaging period, if otherwise applicable, is 5 years or 10 years. The term "lump sum distribution" is defined in section 402(e)(4)(A) as follows:

(A) LUMP SUM DISTRIBUTION.—For purposes of this section and section 403, the term "lump sum distribution" means the distribution or payment within one taxable year of the recipient of the balance to the credit of an employee which becomes payable to the recipient—
    (i) on account of the employee's death,
    (ii) after the employee attains age 59½,
    (iii) on account of the employee's separation from the service, or
    (iv) after the employee has become disabled (within the meaning of section 72(m)(7))
from a trust which forms a part of a plan described in section 401(a) and which is exempt from tax under section 501 * * *

Thus, a lump sum distribution is defined as a distribution during a single tax year of the employee's entire accrued benefit or account balance from a tax-qualified plan on account of one of four specified events: Death, attainment of 59½ years of age, separation from service, or disability.

Here, as already noted, petitioner did receive her entire accrued benefit from a tax-qualified defined benefit pension plan during 1988. However, it is clear from the record that the distribution was not made on account of any of the four statutorily designated events. Petitioner (the employee) had neither died nor reached age 59½ at the time of the distribution;[6] and, as stipulated by the parties, "The * * * distribution * * * was not made to the petitioner on account of [either] separation from service or disability". The distribution was instead made to petitioner because of the bank's termination of the plan—an event not described in section 402(e)(4)(A). Since the distribution was occasioned by an event not specified in section 402(e)(4)(A), it did not constitute a lump sum distribution as defined therein. The distribution was, therefore, not eligible for either 5-year or 10-year averaging, since in either case the authority for such averaging treatment stems from section 402(e)(1),[7] which is captioned "Imposition of separate tax on lump sum distribu-

---

[6] The parties stipulated that petitioner was born on Jan. 13, 1934. Thus, she would have been 54 years of age for most of 1988.

[7] The authority for 10-year averaging is derived from sec. 402(e)(1), as affected by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1122(h)(5), 100 Stat. 2085, 2471.

tions", and which refers to the term "lump sum distribution" repeatedly.

Petitioner nonetheless advances the following arguments in support of her contention that the distribution qualified for 10-year averaging. First, petitioner argues that in the case of a pension plan termination, the applicable definition of the term "lump sum distribution" is contained in section 401(k)(10)(B)(ii) rather than section 402(e)(4)(A).

Section 401(k)(10)(B)(ii) provides in pertinent part that "For purposes of this subparagraph, the term 'lump sum distribution' has the meaning given such term by section 402(e)(4), without regard to clauses (i), (ii), (iii), and (iv) of subparagraph (A)". In other words, a lump sum distribution is defined under section 401(k)(10)(B) without regard to whether the taxpayer is (i) deceased, (ii) age 59½, (iii) separated from service with the employer, or (iv) disabled. However, the sentence relied on by petitioner significantly begins with the antecedent qualification "For purposes of *this subparagraph*". Sec. 401(k)(10)(B)(ii) (emphasis added). That subparagraph (B), which should be read in conjunction with subparagraph (A) of section 401(k)(10), merely relates to section 401(k)(2), which defines the term "qualified cash or deferred arrangement" (CODA) for purposes of section 401(k)(1). Section 401(k)(1) in turn provides that certain types of retirement arrangements will not be considered as failing to meet the section 401(a) qualification requirements of plans merely because they include a CODA.

Thus, even though the definition of the term "lump sum distribution" in section 401(k)(10)(B), by its own terms, applies for the limited purpose of defining a CODA under section 401(k), petitioner nonetheless urges us to adopt it here. But the definition of a CODA is plainly not the issue in this case, nor for that matter is there anything in the record suggesting that the plan herein even contained such a feature. There is no question before us as to the qualification of the plan involved herein. Indeed, the parties have stipulated that "The plan was qualified under I.R.C. §401". The section 401(k)(10)(B) definition of a lump sum distribution, which is relevant only with respect to such qualification, is clearly inapplicable here.

In stark contrast, the section 402(e)(4)(A) definition of lump sum distribution applies "For purposes of *this section*

and section 403". (Emphasis added.) Since lump sum averaging is authorized under a specific provision in section 402(e)(1), it is therefore clearly within the scope of the definition set out in section 402(e)(4)(A). We reject petitioner's contention that a lump sum distribution should be defined by reference to section 401(k)(10) rather than section 402(e)(4)(A) for purposes of applying lump sum averaging.

Next, petitioner attempts to justify the use of 10-year averaging by relying on a transitional provision contained in TRA section 1122(h), pertinent portions of which are as follows:

(h) Effective Dates.—

\* \* \* \* \* \* \*

(3) Special Rule for Individuals Who Attained Age 50 Before January 1, 1986.—

(A) In General.—In the case of a lump sum distribution to which this paragraph applies—

\* \* \* \* \* \* \*

(ii) the requirement of subparagraph (B) of section 402(e)(4) of the Internal Revenue Code of 1986 (as amended by subsection (a) [of this Act]) that the distribution be received after attaining age 59½ shall not apply.

\* \* \* \* \* \* \*

(C) Lump Sum Distributions to Which Paragraph Applies.—This paragraph shall apply to any lump sum distribution if—

(i) such lump sum distribution is received by an individual who has attained age 50 before January 1, 1986, and

(ii) the taxpayer makes an election under this paragraph.

\* \* \* \* \* \* \*

(5) Election of 10-Year Averaging.—An individual who has attained age 50 before January 1, 1986, and elects the application of paragraph (3) [of this Act] or section 402(e)(1) of the Internal Revenue Code of 1986 (as amended by this Act) may elect to have such section applied by substituting "10 times" for "5 times" and "1/10" for "1/5" in subparagraph (B) thereof.
\* \* \*

It is quite true that a superficial or uncritical reading of TRA section 1122(h)(3)(A) and (C) might appear to support petitioner's position. But a careful examination of these provisions in the context of section 402(e)(4)(A) and (B) of the Code and the objective which Congress undertook to achieve by the TRA section 1122(h) amendments leaves no doubt that such amendments simply do not support petitioner's position.

In the first place, it is most important that the respective roles of Code section 402(e)(4)(A) and (B) be kept clearly in mind. Subparagraph (A) *defines* a lump sum distribution, which is a term of art for purposes of section 402. On the other hand, subparagraph (B) is an *operative* provision which restricts the use of section 402(e)(1) income averaging so as to make it applicable only if the employee receives the lump-sum distribution (as defined in subparagraph (A)) on or after attaining age 59½. In the second place, the TRA section 1122(h)(3)(A) and (C) amendments must be carefully examined in relation to the respective subparagraphs (A) and (B) of Code section 402(e)(4). It is of critical importance to note that they affect only subparagraph (B) and in no way undertake to change the subparagraph (A) definition of a lump sum distribution. Subparagraph (B) reads as follows:

(B) Averaging to apply to 1 lump sum distribution after age 59½.—Paragraph (1) shall apply to a lump sum distribution with respect to an employee under subparagraph (A) only if—

(i) such amount is received on or after the employee has attained age 59½, and

(ii) the taxpayer elects for the taxable year to have all such amounts received during such taxable year so treated.

Not more than 1 election may be made under this subparagraph by any taxpayer with respect to any employee. * * *

TRA section 1122(h)(3) operates by creating a transitional exception to Code section 402(e)(4)(B), which had been tightened by the 1986 legislation so as to limit the right to income averaging to lump sum distributions to employees who had attained age 59½.[8] Prior to TRA there was no requirement whatsoever in subparagraph (B) restricting the right to income averaging to employees who had attained age 59½.[9] All that was required was that the distribution satisfy one of the four conditions of the definition of a lump sum distribution in subparagraph (A), only one of which involved attaining age 59½. Thus, petitioner would not have been entitled to income averaging prior to the 1986 legislation, since *none* of the four conditions for a lump sum distribution had been

---

[8] See H. Rept. 99-426, at 732-733 (1985), 1986-3 C.B. (Vol. 2) 1, 732-733; S. Rept. 99-313, at 608-609 (1986), 1986-3 C.B. (Vol. 3) 1, 608-609; H. Conf. Rept. 99-841 (Vol. II), at 459-462 (1986), 1986-3 C.B. (Vol. 4) 1, 459-462.

[9] Prior to the 1986 legislative changes, subpar. (B) provided merely that only one election might be made by an employee after attaining age 59½.

met. Petitioner nonetheless contends that she was entitled to use income averaging on the distribution in 1988 by reason of TRA section 1122(h)(3). But that provision was intended merely to lessen to a limited extent the impact of the added restrictions incorporated into Code section 402(e)(4)(B) in 1986. There is no indication at all that Congress in 1986 intended to enlarge the right to use income averaging. And it would be bizarre indeed if a taxpayer's right to income averaging was increased by the very legislation that was intended to limit that right.

The plain fact is that the 50-year age provision in TRA section 1122(h)(3), relied upon by petitioner, was concerned only with the treatment of lump sum distributions in subparagraph (B) of Code section 402(e)(4), and in no way changed the *definition* of a lump sum distribution in subparagraph (A) of Code section 402(e)(4). And a literal reading of the statute, taking both subparagraphs (A) and (B) of Code section 402(e)(4) together, demonstrates that the age 50 provision is inapplicable here because it relates only to a *lump sum distribution,* a term that is defined in subparagraph (A). That definition was already in the Code when TRA section 1122(h)(3) was enacted in 1986. And there is nothing in TRA section 1122(h)(3) that even suggests that Congress did not intend the Code section 402(e)(4)(A) definition of a lump sum distribution to apply when it referred to that term in TRA section 1122(h)(3). As this Court stated in *Samonds v. Commissioner,* T.C. Memo. 1993-329 (slip op. at 10), with respect to another 1986 transitional provision in TRA, "For purposes of TRA section 1124, the term 'lump-sum distribution' has the same meaning as found in section 402(e)(4)(A)."

The distribution here was made only because of the termination of the plan, which does not come within any of the four alternative qualifying conditions of the definition in subparagraph (A) of Code section 402(e)(4). As indicated earlier, the term "lump sum distribution" as used in Code section 402 is a term of art. It is irrelevant that the distribution here might be referred to colloquially as a lump sum distribution. It was not a lump sum distribution as defined in subparagraph (A). The age 50 provision upon which petitioner relies is found in statutory language relating exclusively to subparagraph (B), which in turn is applicable only

if there is a lump sum distribution as defined in subparagraph (A).

It is easy to see how confusion can arise because the age 59½ language is found in both subparagraphs (A) and (B). However, in subparagraph (A), attainment of age 59½ is only one of four alternative conditions required to satisfy the definition of a lump sum distribution. In contrast, subparagraph (B) undertakes to limit the use of income averaging in respect of distributions received by an employee after attaining age 59½ (or, as affected by TRA section 1122(h)(3), after attaining age 50). Regardless of age, there may be a lump sum distribution as defined in subparagraph (A) of Code section 402(e)(4) if any one of the other three remaining conditions of subparagraph (A) is satisfied. See *Cebula v. Commissioner*, 101 T.C. 70, 73 (1993). The complexity of these provisions is exasperating,[10] but upon struggling through them we find only one answer to the question before us. The age 50 provision relied upon by petitioner in the modified subparagraph (B) simply does not apply here because we do not have a lump sum distribution within subparagraph (A).

## 2. *10-Percent Additional Tax Under Section 72(t)*

Petitioner has disputed the Commissioner's imposition of a 10-percent addition to tax on the lump sum distribution. In the assignments of error in the petition to this Court, it was alleged that "Commissioner erred in making the imposition of the 10 percent tax in the amount of $1,317.90, being the imposition of the penalty tax on early distribution of an Individual Retirement Account". However, petitioner has not addressed this issue either in her opening brief or in her reply to respondent's brief notwithstanding that respondent's brief made the argument that section 72(t) was applicable here. Accordingly, we could consider the point as having been abandoned by petitioner. Nevertheless, there is no merit to the point.

Section 72(t)(1) imposes a 10-percent additional tax on distributions from qualified plans unless the distribution meets

---

[10] We have complained on many occasions about the complexity of the Code. See, e.g., *Baicker v. Commissioner*, 93 T.C. 316, 319-320 (1989); *DeMarco v. Commissioner*, 87 T.C. 518, 526-527 (1986), affd. 831 F.2d 281 (1st Cir. 1987); *Estate of Rosenberg v. Commissioner*, 86 T.C. 980, 986-987, 988-989 (1986); *Bolton v. Commissioner*, 77 T.C. 104, 109 (1981), affd. 694 F.2d 556 (9th Cir. 1982); *Foxman v. Commissioner*, 41 T.C. 535, 550, 551 n.9 (1964), affd. 352 F.2d 466 (3d Cir. 1965).

one of the exceptions listed in section 72(t)(2), of which the most significant exception here is that the 10-percent additional tax does not apply if the distribution was made on or after the date that the taxpayer attained age 59½.

As already noted, petitioner clearly had not attained 59½ years of age at the time she received the distribution here at issue. Nor is there any evidence indicating that the distribution to petitioner qualified under any of the other exceptions specified in section 72(t)(2). Thus, it is difficult to discern the basis upon which petitioner disputed the imposition of additional tax under section 72(t). Perhaps petitioner assumed that a lump sum distribution which qualifies for 10-year averaging is not subject to additional tax under section 72(t), and that the distribution to her was for that reason not subject to section 72(t). The difficulty with such an assumption is twofold. First, the proposition is flatly incorrect. The fact that a distribution received prior to age 59½ qualifies for 10-year averaging does not in any way preclude imposition of additional tax under section 72(t). This Court recently so held in *Bullard v. Commissioner,* T.C. Memo. 1993-39. Second, even if the proposition were correct, the distribution to petitioner, unlike the distribution in *Bullard,* was—for the reasons stated earlier—not a lump sum distribution and thus was not eligible for lump sum averaging in the first place.[11]

The Commissioner's determination of additional tax under section 72(t) is sustained.

*Decision will be entered for respondent.*

[11]The taxpayers in *Bullard v. Commissioner,* T.C. Memo. 1993-39, were entitled to income averaging since they had attained 50 years of age, but, unlike the instant case, the distributions there qualified as lump sum distributions under sec. 402(e)(4)(A)(iii) because they were made on account of separation from the service.