T.C. Memo. 1995-575


UNITED STATES TAX COURT


WINTHROP B. AND SALLY L. ORGERA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17414-93.          Filed December 4, 1995.


<u>William D. Hartsock</u>,[1] for petitioners.

<u>Sherri S. Wilder</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent determined a $99,344 deficiency
in petitioners' 1990 income tax.  Respondent also determined a
$19,869 penalty under section 6662(a).[2]  The deficiency includes

_____

[1] William D. Hartsock entered his appearance after trial for
involvement in posttrial briefing.

[2] Section references are to the Internal Revenue Code in
(continued...)

a 10-percent tax for premature distribution from a qualified plan.  After concessions by the parties, the issues remaining for our consideration are:  (1) Whether petitioners successfully rolled over a 1990 plan distribution of $246,647 or whether it was taxable; (2) if the distribution was taxable, whether it was subject to the 10-percent additional tax for premature distribution under section 72(t); (3) whether the distribution is a lump-sum distribution that meets the requirements for income averaging under section 402(e); and (4) whether petitioners are liable for a $19,869 accuracy-related penalty for negligence or disregard of rules and regulations for failing to report the pension distribution and other income.

                           FINDINGS OF FACT

     Petitioners resided in San Juan Capistrano, California, at the time their petition was filed.  As of July 18, 1990, each of petitioners was less than 54 years of age.  Winthrop Orgera (petitioner) was employed as a pilot by Western Air Lines, Inc. (Western), prior to July 18, 1990.  Petitioner participated in Western's Pilots' Variable Pension Plan (Plan), of which Sumitomo Bank was the trustee.  Petitioner made voluntary contributions to the fund, and, on July 18, 1990, he received a $246,647.68 cash distribution from the Plan.  The Plan's assets were distributed

---

     [2](...continued)
effect for the tax year under consideration.  Rule references are to this Court's Rules of Practice and Procedure.

because Delta Airlines had bought out Western and did not wish to continue Western's pilots' Plan.

Petitioner met with Thomas Supinski of the Western Federal Credit Union (credit union) regarding the rollover of his Plan distribution. Mr. Supinski and the credit union were attempting to assist Western's employees to roll over their distributions into individual retirement accounts (IRA). The credit union had been connected with Western, petitioner's former employer. Mr. Supinski recommended the use of the First National Bank of Onaga, Kansas (Kansas bank), to open an IRA. As of August 17, 1990, petitioner had completed an IRA application and a rollover certification with the Kansas bank. Petitioner also executed a trading authorization that appointed Thomas Supinski as the IRA account representative of account No. 41003212, which was applied for at the Kansas bank.

In addition to the cash distribution, petitioner expected that he would receive a distribution, in kind, of illiquid assets and that the Kansas Bank would be trustee for the assets that might be received by the IRA account. The illiquid assets represented about 9 or 10 percent of the total amount to be distributed from the Plan to Western pilots, including petitioner. It was Mr. Supinski's understanding that petitioner's Kansas bank IRA was exclusively for the illiquid assets. Petitioner did not understand that the Kansas bank IRA did not cover the cash portion of the Plan distribution. Mr.

Supinski tried to persuade petitioner to invest the $246,647.68 cash distribution in certain financial products and to include them in the IRA. Petitioner advised Mr. Supinski that he was going to handle the cash distribution himself and set up his own IRA.

On August 17, 1990, petitioner deposited $239,641.91 in money market account No. 9 at the credit union, and he retained the $7,005.77 difference (between the distribution and the deposit). On February 20, 1992, petitioners withdrew $139,126 from account No. 9 and deposited it into a qualified IRA with Charles Schwab & Co., Inc. Prior to the February 20, 1992, transaction, petitioners had withdrawn a total of $196,919.68 from account No. 9. Of the $196,919.68, $101,475.21 was redeposited into petitioners' regular share account with the credit union, account No. 1. In addition, $50,000 of the $196,919.68 was withdrawn on August 21, 1990, and used by petitioners in connection with the building of their home. Petitioners did not report any portion of the Plan distribution or credit union withdrawals as income on their 1990 Federal income tax return. Petitioners, for 1990, also failed to report $1,971 of income from Prudential Insurance Co. and $18 of interest income from Great American Bank.

By a letter dated June 27, 1991, the Kansas bank acknowledged receiving petitioner's documents with which to open an IRA, but advised that "Liquidating Trust Certificates" had not

been received from Western, and, accordingly, it became the
bank's understanding that the IRA accounts were not to have been
opened.  By a letter dated July 19, 1991, the Kansas bank advised
petitioner of the return of a $27 custodial fee, which had been
paid by the credit union with respect to petitioner's IRA
account.  The fee was returned because the IRA had not been
funded and the IRA accounts had been closed.

## OPINION

Section 402(a)(1)[3] provides the general rule that amounts
distributed by a qualified plan are taxable in the year of
distribution in accordance with the provisions of section 72.
Section 402(a)(5) provides that taxation of a current
distribution may be deferred if it is rolled over into an
eligible retirement plan within 60 days of the distribution.
Petitioners bear the burden of proving that respondent's
determination is in error.  Rule 142(a); Welch v. Helvering, 290
U.S. 111 (1933).  Accordingly, petitioners must show that the
cash distribution in question was rolled over into an eligible
retirement plan within 60 days.

Petitioner concedes that the $7,005.77 of the Plan
distribution that was not deposited and the $50,000 that was

---

[3] Sec. 402 as used in this opinion refers to the section in
effect for distributions made prior to Dec. 31, 1992.  The
Unemployment Compensation Amendments of 1992, Pub. L. 102-318,
sec. 521(a), 106 Stat. 290, 300, restructured and reconfigured
sec. 402 for years after the 1992 calendar year.

withdrawn during 1990 are taxable in that year.  With respect to the balance, petitioner argues that his credit union deposit was sufficient to meet the requirements of section 402(a)(5).  It was petitioner's understanding that an IRA account had been opened with the Kansas bank and that he was covered for purposes of the rollover.  Petitioner also believed that the credit union and Mr. Supinski were connected with petitioner's former employer, Western, and that they were trying to assist in the rollover process.  Although Mr. Supinski attempted to make it clear to petitioner that his IRA with the Kansas bank was only for illiquid assets distributed in kind, petitioner believed that somehow the credit union, the Kansas bank, and his IRA were connected.

During the trial, petitioner demonstrated an unfamiliarity with the role of the Kansas bank, the nature or mechanics of an IRA account, and Mr. Supinski's role in the entire process. Petitioner believed that maintaining the plan distributions in his Western credit union accounts was part of his IRA.  Mr. Supinski was attempting to profit from selling investments to be included in petitioner's IRA.  Petitioner did not make a distinction between depositing the distribution in the credit union and the investments recommended by Mr. Supinski for placement in the IRA.

Petitioner applied for an IRA, which was opened in his name, albeit in a Kansas bank.  Petitioner followed Mr. Supinski's

instructions as to opening the IRA at the Kansas bank, but that account was never funded. After petitioner learned his approach was inadequate, he put the remaining funds into a valid IRA. Even though a part of the plan distribution was ultimately placed into a valid IRA, petitioners failed to roll over any part of the $246,647.68 cash distribution within 60 days in a manner that would meet the requirements for deferral under section 402(a)(5).

Petitioner contends that the holding in Wood v. Commissioner, 93 T.C. 114 (1989), is applicable here. That case involved a distribution of a profit-sharing plan followed by the taxpayer's establishment of an IRA. Due to a bookkeeping error by the IRA trustee, certain of the trustee's records indicated that part of the distribution had not been transferred to the IRA account within the required 60 days. In Wood, we held that the trustee's bookkeeping error did not preclude the taxpayer's rollover treatment because, in substance, the taxpayer had met the statutory requirements.

Here, petitioner had established an IRA, yet, due to petitioner's lack of understanding, he failed to make a timely transfer of the distribution to an IRA that met the statutory requirements. Hence, the distribution made in 1990 is taxable as determined by respondent.

Respondent also determined that petitioners were liable for the 10-percent additional tax for early distribution under section 72(t). That section provides for an additional tax for

any amount received from a qualified plan, unless it is: Made after the employee becomes 59-1/2 years old; made to a beneficiary after the employee's death; attributable to the employee's being disabled; part of a series of substantially equal payments made no less than annually for the life of designated persons; made to an employee who is separated from service after attaining age 55; a dividend paid with respect to a stock described in section 404(k); made to an employee for medical expenses in accordance with section 72(t)(2)(B); or a payment in connection with a qualified domestic relations order in accordance with section 72(t)(2)(C).

Because petitioner was 54 years of age as of 1990 and none of the other exceptions set forth in the provisions of section 72(t)(2) is satisfied, petitioners are liable for an additional 10-percent tax on the early distribution.

Under section 402(e), a lump-sum distribution made after the employee attained the age of 59-1/2 was, in certain circumstances, eligible for income-averaging treatment. Petitioner was just 54 years old at the time of the distribution, which renders him ineligible for income averaging under the express terms of section 402(e)(4)(B)(i). See Cebula v. Commissioner, 101 T.C. 70 (1993). Moreover, as explained infra, the distribution was not a lump sum because less than the full balance of the account was distributed during the year.

Moreover, the record reflects that petitioner received cash amounts representing about 90 percent of his Plan interest and that about 10 percent of his Plan account was tied up in illiquid assets that were supposedly to be placed in the Kansas bank IRA. For reasons that are not explained in our record, as of 1991, the illiquid assets had not been trusteed or placed in petitioner's IRA account, and the $27 custodial fee was returned to petitioner. These illiquid assets were not distributed during 1990. Consequently, the distribution of cash to petitioner in that year did not represent the full balance standing to his account in the Plan and failed to qualify as a lump-sum distribution.

Petitioner also argues that Congress did not intend that taxpayers be subject to the full impact of the tax in these situations. It is true that petitioner's distribution was made due to circumstances beyond his control. The statute, however, requires that the distribution of a taxpayer's entire account during the year be made in specific circumstances, which did not occur here. In addition, Congress provided a method for deferral, yet petitioner failed to comply with the statutory requirements to obtain such deferral. Accordingly, petitioners are not entitled to section 402 relief, in the form of a tax-free rollover or income averaging, for 1990, the year of the distribution.

Finally, we consider whether petitioners are liable for an accuracy-related penalty for negligence under section 6662(a) and (b)(1). Section 6662(a) provides for a 20-percent penalty for the portion of the underpayment of tax attributable to one of the categories listed in section 6662(b). Section 6662(b)(1) provides that negligence or disregard of rules or regulations is a reason for imposition of the 20-percent addition.

Negligence includes a lack of due care or a failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners bear the burden of proving that respondent's determination of negligence is erroneous. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972).

Petitioner, at least with respect to 1990, was erroneously under the impression that his credit union accounts were covered under the IRA account that he opened. During the confusion of the takeover by Delta Airlines and the closing of the pilots' pension Plan that had operated while petitioner worked for Western, petitioner executed IRA papers, and, for the most part, deposited his funds in the credit union that was affiliated with the organization and the individual (Mr. Supinski) who assisted petitioner in the opening of petitioner's IRA account. Taking into consideration petitioner's lack of specialized knowledge about IRA's and tax law involving pension plans, and, considering the circumstances in this case, it was reasonable for petitioner

to believe that he had rolled over his pension distribution into an IRA. Mr. Supinski had attempted to direct petitioner to financial products on which Mr. Supinski would have earned commissions. Petitioner believed that he could individually place his funds in an investment of his choice because he had already opened an IRA account. While this did not win the day as to petitioners' tax liability argument, we hold that petitioners are not liable for the negligence addition for the portion of the funds that remained deposited in petitioner's credit union accounts as of the end of 1990.

With respect to the $7,005.77 initially withheld from deposit, the $50,000 withdrawn by petitioners to build a home, and the unreported income in the amounts of $1,971 and $18, petitioners did not provide any explanation that would mitigate respondent's determination of negligence under section 6662(a). Accordingly, we hold that petitioners are liable for the 20-percent penalty as to that part of the underpayment which is attributable to the $50,000, $7,005.77, $1,971, and $18 omitted amounts.

To reflect the foregoing,

Decision will be entered under Rule 155.