T.C. Summary Opinion 2004-29


UNITED STATES TAX COURT


HOWARD T. OWENS, JR., AND ANN E. OWENS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1761-02S.              Filed March 15, 2004.


Howard T. Owens, Jr., and Ann E. Owens, pro sese.

<u>Frank W. Louis</u>, for respondent.


WHERRY, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
at the time the petition was filed.[1]  The decision to be entered
is not reviewable by any other court, and this opinion should not
be cited as authority.

_____

   [1] Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the year in issue, and Rule
references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a Federal income tax deficiency for petitioners' 1999 taxable year in the amount of $2,000. The sole issue for decision is whether petitioners are liable for the 10-percent additional tax under section 72(t) for a withdrawal of $20,000 on or about May 20, 1999, from an individual retirement account (IRA) in the name of Ann E. Owens.

## Background

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference. At the time the petition was filed in this case, petitioners resided in Bridgeport, Connecticut.

Petitioners Howard T. Owens, Jr., and Ann E. Owens, husband and wife, were born on July 20, 1934, and March 29, 1941, respectively. In 1999, petitioners owned multiple IRA accounts, including a Fidelity Investments Traditional IRA in the name of Howard T. Owens, Jr., and a Fidelity Investments Traditional IRA in the name of Ann E. Owens. As of early May 1999, the balance of the Howard T. Owens, Jr., account was in excess of $195,000 and that of the Ann E. Owens account was in excess of $85,000.

On or about May 20, 1999, a withdrawal in the amount of $20,000 was made from the Ann E. Owens IRA. At this time, Ann E. Owens was 58 years of age. The withdrawal was indicated on the

quarterly investment reports sent to Ann E. Owens on or about June 10, 1999, and September 9, 1999.

Petitioners filed a joint Form 1040, U.S. Individual Income Tax Return, for 1999.  On their return they included $20,049 as a taxable pension distribution, based on the foregoing May 20th withdrawal, but they did not report the 10-percent additional tax attributable to a premature IRA withdrawal.  On August 22, 2001, respondent issued to petitioners a notice of deficiency determining that they were liable for this additional tax in the amount of $2,000.

## Discussion

### I.  General Rules

In general, section 408 governs the treatment of IRAs. Specifically, section 408(d) provides that distributions from an IRA are taxable in the manner directed in section 72 unless properly rolled over within 60 days into another IRA or eligible retirement plan.  Section 72 typically operates to include distributions in gross income, and subsection (t) provides for an additional tax on premature distributions, reading as follows in relevant part:

> SEC. 72(t).  10-Percent Additional Tax on Early Distributions from Qualified Retirement Plans.--
>
> (1) Imposition of additional tax.--If any taxpayer receives any amount from a qualified retirement plan (as defined in section 4974(c)), the taxpayer's tax under this chapter for the taxable year in which such amount is received

shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.

(2) Subsection not to apply to certain distributions.--Except as provided in paragraphs (3) and (4), paragraph (1) shall not apply to any of the following distributions:

(A) In general.--Distributions which are--

(i) made on or after the date on which the employee attains age 59½,

(ii) made to a beneficiary (or to the estate of the employee) on or after the death of the employee,

(iii) attributable to the employee's being disabled within the meaning of subsection (m)(7),

(iv) part of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the employee or the joint lives (or joint life expectancies) of such employee and his designated beneficiary,

(v) made to an employee after separation from service after attainment of age 55, or

(vi) dividends paid with respect to stock of a corporation which are described in section 404(k).

(B) Medical expenses.-- * * *

(C) Payments to alternate payees pursuant to qualified domestic relations orders.-- * * *

(D) Distributions to unemployed individuals for health insurance premiums.-- * * *

(E) Distributions from individual retirement plans for higher education expenses.-- * * *

(F) Distributions from certain plans for first home purchases.-- * * *

(3) Limitations.--

(A) Certain exceptions not to apply to individual retirement plans.--Subparagraphs (A)(v) and (C) of paragraph (2) shall not apply to distributions from an individual retirement plan.

For purposes of the foregoing statute, section 4974(c) includes an IRA described in section 408(a) as a qualified retirement plan.

## II.  Contentions of the Parties

It is respondent's position that petitioners' IRA distribution falls within the terms specified in section 72(t)(1) for imposition of the 10-percent additional tax and that none of the exceptions enumerated in paragraph (2) apply on these facts. Petitioners concede that the $20,000 was withdrawn from the IRA of Ann E. Owens at a time she was only 58 years old and that the amount was not rolled over into another retirement account or plan.  Additionally, petitioners have at no time contended that any of the exceptions set forth in section 72(t)(2) are applicable in their circumstances.  Nonetheless, petitioners apparently believe that they should be relieved of the 10-percent additional tax on grounds of equity or fairness.

Howard T. Owens, Jr., provided the following testimony at trial:

> my recollection was that I asked Fidelity to take the money out of my own account. And quite frankly, I gave--I was not aware until maybe a year and a half later after I filed my returns for the year 1999. That would be in 199--I did probably file them in August because I had an extension. And I got a report back from the IRS that I had failed to give them the 10 percent, or my wife had failed to give them the 10 percent, and we had filed joint accounts.
>
> My recollection is that I had given the materials to my accountant, and he just assumed probably when I showed it to him that my wife was of age and would not be penalized at that time. We had no discussion on it or anything of that sort.
>
> Obviously, I got a report indicating that it had been taken out of my wife's account, one--the report that you have there. But I just didn't look at it for some reason.
>
> And it seems to me that the logic of it would appear, since neither of these accounts had been very active and have not been active since, nor has the joint account been active since, that there would be no reason for me to take any money from her account and pay a penalty for it when I have in excess or close to $200,000 in my own account. Now I realize that obviously I was wrong. And as I said before, it was too late to roll it over because I wasn't made aware of it until some time, maybe a year later or so, when I got a notice from the IRS.
>
> So that I'm just asking the Court--it seems to me that since there was substantial money and it was my intention and it is my recollection that I did direct them to take it from the account, I think they took it from the wrong account. And I don't think I should be penalized for it. That's the sum and substance.[2]

---

[2] The Court notes that its resolution of this matter turns principally on the legal question of whether it may depart from

(continued...)

III.  Analysis

The Court concurs with petitioners' contentions that there was little reason to withdraw funds from the IRA of Ann E. Owens and incur an unnecessary 10-percent tax under section 72(t) when the funds could have been withdrawn from Howard T. Owens, Jr.'s IRA without imposition of the additional tax.  Nevertheless, the Tax Court is a court of limited jurisdiction and lacks general equitable powers.  Commissioner v. McCoy, 484 U.S. 3,7 (1987); Hays Corp. v. Commissioner, 40 T.C. 436, 442-443 (1963), affd. 331 F.2d 422 (7th Cir. 1964).  Consequently, our jurisdiction to grant equitable relief is limited.  Woods v. Commissioner, 92 T.C. 776, 784-787 (1989); Estate of Rosenberg v. Commissioner, 73 T.C. 1014, 1017-1018 (1980).  This Court has no authority to disregard the express provisions of statutes adopted by Congress, even where the result in a particular case, such as the instant proceeding, seems harsh.  Estate of Cowser v. Commissioner, 736 F.2d 1168, 1171, 1174 (7th Cir. 1984), affg. 80 T.C. 783 (1983).

With respect to section 72(t) in particular, this Court has repeatedly ruled that it is bound by the list of statutory exceptions enumerated in section 72(t)(2).  See, e.g., Arnold v.

_____

[2](...continued)
sec. 72(t)(2), as written.  Because the Court's ruling on this issue renders superfluous further facts beyond those stipulated by the parties, no findings are made with respect to the accuracy of additional aspects of Howard T. Owens, Jr.'s recollections. In a similar vein, this case is decided without regard to burden of proof.  See sec. 7491; Rule 142.

Commissioner, 111 T.C. 250, 255 (1998); Schoof v. Commissioner, 110 T.C. 1, 11 (1998); Clark v. Commissioner, 101 T.C. 215, 224-225 (1993); Swihart v. Commisioner, T.C. Memo. 1998-407; Pulliam v. Commissioner, T.C. Memo. 1996-354; Roundy v. Commissioner, T.C. Memo. 1995-298, affd. 122 F.3d 835 (9th Cir. 1997). The explicit and detailed inclusion of specific exceptions as part of the statutory scheme itself suggests that other liberties should not be indiscriminately inserted through the judicial process. Cf. Larotonda v. Commissioner, 89 T.C. 287 (1987) (interpreting former section 72(m)(5), a penalty provision without the list now contained in section 72(t)(2), and largely limited to its facts by our subsequent holding in Aronson v. Commissioner, 98 T.C. 283 (1992)).

This impression is further buttressed by legislative history. The 10-percent additional tax provision designated section 72(t) was enacted as part of the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1123, 100 Stat. 2472. Committee reports accompanying the statute's passage reflect that the exceptions given were a deliberate and considered part of the development of section 72(t). See H. Rept. 99-426, at 727-731 (1985), 1986-3 C.B. (Vol. 2) 1, 727-731; S. Rept. 99-313, at 611-617 (1986), 1986-3 C.B. (Vol. 3) 1, 611-617; H. Conf. Rept. 99-841, at II-452 to II-458 (1986), 1986-3 C.B. (Vol. 4) 1, 452-458. Also, any over-broadening of the grounds for exception could thwart the

purpose identified in the legislative history for the additional tax, to wit:

> Although the committee recognizes the importance of encouraging taxpayers to save for retirement, the committee also believes that tax incentives for retirement savings are inappropriate unless the savings generally are not diverted to nonretirement uses. One way to prevent such diversion is to impose an additional income tax on early withdrawals from tax-favored retirement savings arrangements in order to discourage withdrawals and to recapture a measure of the tax benefits that have been provided. * * * [S. Rept. 99-313, supra at 613, 1986-3 C.B. (Vol. 3) at 613; see also H. Rept. 99-426, supra at 727-728, 1986-3 C.B. (Vol. 2) at 728-729.]

In the face of these authorities, petitioners on brief cite two potential bases in support of their request for relief from the 10-percent tax. First, petitioners point to language in H. Conf. Rept. 107-84, at 252-253 (2001), accompanying the Economic Growth and Tax Relief Reconciliation Act of 2001, Pub. L. 107-16, sec. 644, 115 Stat. 123. This legislation amended sections 402(c)(3) and 408(d)(3) to grant the Secretary authority to waive the 60-day requirement for rollovers where failure to do so would be against equity or good conscience. The conference report cited by petitioners lists various circumstances that Congress anticipated might qualify for such a waiver, including errors committed by a financial institution. H. Conf. Rept. 107-84, supra at 252-253.

However, neither the foregoing legislative changes nor their underlying history aids petitioners here. Critically, the

statutory amendments are effective only with respect to distributions made after December 31, 2001. Economic Growth and Tax Relief Reconciliation Act of 2001, sec. 644(c), 115 Stat. 123. Moreover, even if applicable, the provisions do not speak to this Court's authority to waive the additional tax on premature withdrawals. No similar amendments were made to the list of exceptions in section 72(t)(2).

Second, petitioners direct our attention to Doing v. Commissioner, 58 T.C. 115 (1972). In that case, the taxpayer sought in 1966 to transfer his assets from one retirement plan to another. Id. at 119-120. He requested in writing that the custodian of the first plan liquidate his investments and forward the proceeds directly to the custodian for the new plan. Id. at 120. Thereafter, the custodian of the first plan, ignoring the taxpayer's instructions, sent the resultant check to the taxpayer, who promptly endorsed the instrument and had it forwarded to the new custodian. Id. at 121-122. The Court held that the taxpayer was not liable for the penalty on premature distributions under former section 72(m)(5). Id. at 129-131.

Doing v. Commissioner, supra, is alas distinguishable from petitioners' situation. As alluded to previously, cases decided under former section 72(m)(5), which did not contain a detailed list of exceptions comparable to present section 72(t), provide little authority for departure from the current legislative

scheme.  Additionally, even if the two statutes could be interpreted to afford similar latitude for equitable relief, the equities in petitioners' scenario bear insufficient resemblance to those portrayed in <u>Doing v. Commissioner</u>, <u>supra</u>.  The evidence in that case clearly vindicated the taxpayer, showing both faultlessness and vigilance by means of his specific written instructions to the financial institution and his immediate attempts to correct the subsequent error.

Petitioners, in contrast, offered testimony of only a "recollection" of a request that Fidelity withdraw the $20,000 amount from the account of Howard T. Owens, Jr., coupled with an admission of failure or inadvertence "for some reason" to look at the account statement reflecting the distribution.  They also never made any prompt and concrete attempt to take remedial action.

In conclusion, although the Court is sympathetic to petitioners' predicament, the circumstances of this case afford no basis upon which petitioners may be relieved of the 10-percent additional tax imposed under section 72(t).  The Court holds that petitioners are liable for the additional tax in the amount of $2,000.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.